Argued June 17; affirmed September 9, 1947

# STATE ex rel HAYDEN v. HILL

(184 P. (2d) 366)

In Banc.

*Miller B. Hayden,* District Attorney of Marion County and *William L. Josslin,* of Portland, for respondent.

*Rex Kimmell*, Assistant Attorney General (George Neuner, Attorney General, and J. M. Devers, Assistant Attorney General, on brief), for appellant.

ROSSMAN, C. J.

This is an appeal by the defendant, Earl H. Hill, from a judgment of the circuit court which removed him from office of member of the State Fish Commission. The latter consists of three commissioners; see § 83-201, O. C. L. A.

This proceeding, which is one of quo warranto (§§ 8-801 to and including 8-815, O. C. L. A.) was instituted by the state upon the information of the district attorney for Marion County. We shall refer to the state as the plaintiff. The defendant is the aforementioned Earl H. Hill.

The plaintiff contends that when the complaint was filed April 27, 1946, the defendant was a state representative elected from the Fourteenth State Representative District and that he was then illegally usurping the office of a member of the Fish Commission. The plaintiff depends upon Article III, Section 1, Constitution of Oregon, which says:

> "The powers of the government shall be divided into three separate departments — the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

The defendant concedes that he was elected state representative November 7, 1944, for a two-year term and acknowledges that he duly qualified for that office.

He admits that in March, 1945, he was appointed a member of the Fish Commission and that he qualified for that office. He claims, however, that when he accepted that office he automatically ceased being a state representative. The brief filed on his behalf by the Attorney General says:

"The two offices involved are the offices of member of the Legislature and member of the State Fish Commission. It is conceded that one of the offices is legislative and one is administrative. It is conceded, too, that the offices are what is termed by court construction 'incompatible.' Therefore, they are within the reach and prohibition of the above-quoted constitutional provision when each is held by the same person at the same time and the functions of both offices are performed by the same person.

\* \* \*

"It is apparent, therefore, that, of the two incompatible offices—to which in one instance the appellant had been elected and in the other instance appointed, and both of which offices the appellant accepted and made proper qualifications for—the acceptance of the office of Fish Commissioner was subject to the election, qualification for and acceptance of the office of member of state legislature. In other words, appellant accepted the administrative office of Fish Commissioner subsequent to his acceptance of the legislative office.

"It was and is the contention of counsel for the appellant that by his acceptance of the second office, which is incompatible with the first, appellant ipso facto vacated the first office."

Section 94-109, O. C. L. A., prior to the time 1945 Oregon Laws, chapter 110, became effective, read as follows:

"Any vacancy occurring in the office of senator or representative from any legislative district within

the state of Oregon due to death, written resignation of a member duly filed with the secretary of state, or when a member shall have been recalled from office, or when a member has been declared disqualified by the house to which such member was elected, shall be filled by the county court  *  *  *."

The defendant concedes that he never resigned in writing from his legislative office. No one claims that he was recalled from that office or that his fellow members in the House of Representatives held him disqualified from membership in that body.

The plaintiff contends that the defendant never vacated his legislative office and that, therefore, he was not eligible for the office of member of the Fish Commission. The defendant argues that the necessary effect of his acceptance of membership in the Fish Commission was to vacate his legislative office, and claims that he has not been a member of the House of Representatives since March, 1945. The sole issue before us is whether the defendant was a member of the House of Representatives or of the Fish Commission when the complaint was filed.

In stating the fact, we shall mention again some which we have already delineated. The defendant was elected to the House of Representatives November 7, 1944, for a two-year term which began in January, 1945. Upon the convening of the legislature in January, 1945, he took the oath of office of representative and thereupon proceeded with the discharge of his duties. February 27, 1945, he was paid $400 as his salary as a representative and $28 for mileage. March 10, 1945, the Governor of this state appointed him to membership upon the Fish Commission for a term extending to June 1, 1945. March 16, 1945, the defendant filed the oath of office required of a member of the Fish

Commission. March 17, 1945, the 1945 session of the legislature adjourned. April 10, 1945, the defendant, as a commissioner, attended a meeting of the Fish Commission and thereafter participated regularly in the transaction of the business of that state agency. May 31, 1945, the defendant was reappointed to the Fish Commission, this time for a term beginning June 2, 1945, and expiring June 1, 1949. June 6, 1945, he filed his oath of office for the new term. It is conceded that he continued to attend the meetings of the commission and discharge the duties of a commissioner. In the period extending from March 10, 1945, to and including December 11, 1945, the defendant was paid a total of $1,413.35, less tax deductions, for per diem service upon the commission and for expenses incurred by him in the discharge of his duties as a member of the commission. Throughout the two-year legislative term to which the defendant was elected November 7, 1944, he used stationery provided for him by the state bearing his name as representative and also postage stamps supplied by the state to all members of the legislature.

February 28, 1946, the defendant filed with the Secretary of State a declaration of candidacy for the Republican nomination for the office of representative from the Fourteenth Representative District. That was the same office to which he had been elected in November, 1944. His declaration of candidacy requested that there be printed after his name upon the ballot the word "Incumbent." In the primary election which was held May 17, 1946, the defendant was renominated representative. In the general election November 5, 1946, he was re-elected to the office of representative. At the convening of the 1947 legislature the defendant took the oath of office required of a member of that body and proceeded with the discharge of the

duties of a representative. He served throughout the session which ended April 5, 1947, as a representative. March 4, 1947, there was paid to him $400 as salary and $28 as mileage allowance. Down to and including the time when this opinion was written, the record, of which we have taken judicial notice, indicates that he has constantly served as a commissioner in the Fish Commission.

There is involved in this proceeding nothing but the legal issue previously stated. No one questions the ability, integrity and high principles of the defendant. The per diem which he occasionaly received for attendance at the meetings of the Fish Commission was nominal. The salary of a legislator is insufficient to permit even the most frugal to profit from it. The contentions advanced in the defendant's name are those of the Attorney General, who, due to the importance of the issues, represents Mr. Hill.

Many states employ the rule which the defendant urges upon us: That acceptance of a second office by an official whose present official duties are incompatible with those demanded by the new office implies a resignation of the first office. Two exceptions are recognized to that rule, but they are immaterial to our purposes. We shall not cite the many decisions which employed this rule. The latter is stated and the decisions are cited in Mechem's, The Law of Public Offices and Officers, §§ 419 to 431; Throop, Public Officers, §§ 30 and 31; 42 Am. Jur., Public Officers, §§ 77, 78 and 79; and 46 C. J., Officers, §§ 55, p. 947. Many decisions are digested and classified in 100 A.L.R. 1162. See also *Holman, et al. v. Lutz, et al.*, 132 Or. 185, 282 P. 241, 284 P. 825; and *State v. Beveridge*, 88 Or. 334, 171 P. 1173.

The principle just stated is employed, not only in instances where the duties of the two offices are incompatible under common-law standards, but also where the situation is governed by constitutional provisions similar to the one which we quoted from Article III, § 1, Constitution of Oregon. The rule is one of common-law origin, and unless protected by a constitutional provision it is susceptible to legislative treatment. The rule, as we have seen, presumes that the acceptance of the second office is a quitting of the first. The presumption is a conclusive one. The fact that the official continued to perform the duties of the first office is deemed immaterial. See Throop, Public Officers, § 31; *State v. Corley*, 36 Del. 135, 172 Atl. 415; and *Pruitt v. Glen Rose Independent School District*, (Tex.), 84 S. W. (2d) 1004, 100 A. L. R. 1158. In the decision last cited, one Kugle was appointed October 23, 1928, to the office of collector of taxes for a school district. November 5, 1928, he was elected sheriff. Three days later he executed and filed with the school district the bond exacted of one who holds the office of collector of school taxes. Although Kugle duly qualified for the office of sheriff, he, nevertheless, continued to perform the duties of school district tax collector. After he had accepted the office of sheriff, he made defalcations in sums paid to him as collector of the school district taxes. In employing the rule that the acceptance of a second office vacates the first, the court held that Kugle was not even a de facto incumbent of the school district office at the time of his defalactions and that, therefore, the sureties upon his bond were not liable for his embezzlement.

One of the virtues claimed for the rule which we have been considering is that it enables the public to identify readily the incumbent of every office: *Stubbs*

*v. Lee,* 64 Me. 195, 18 Am. Rep. 251. All that the citizen need do, according to this claim, is to determine which office the official last accepted and thereby he will know the incumbent. The fact that the same official was previously elected or appointed to another office, the duties of which he continues to perform, the citizen is assured is immaterial, for the rule conclusively presumes that the prior office was resigned when the present one was accepted. Under that rule there can never be a violation of a constitutional provision similar to Article III, § 1, Constitution of Oregon, for it is impossible theoretically under this rule for one person to hold more than one office at a time. See, however, *State v. Corley,* supra, where the Delaware legislature declined to unseat three members of its body after they had accepted offices in the executive department. The Delaware constitution forbade dual office holding.

The virtue of certainty of identification of the public official, which it is claimed this rule produces, is illusory rather than real when one reviews the facts reflected by the record before us. Under the rule we are asked to believe that (1) from January 8, 1945, to March 16, 1945, the defendant was a member of the legislature; (2) from March 16, 1945, to January 13, 1947, the defendant was a Fish Commissioner; (3) from January 13, 1947, to April 6, 1947, the defendant was a member of the legislature; (4) from April 6, 1947, to and including the present, the defendant has been a Fish Commissioner. Thus, this rule would require the court to presume conclusively that the defendant resigned in March, 1945, his office as a legislator, that in January, 1945, he resigned from his office as Fish Commissioner, and that in April, 1947, he again resigned from the legislature. There is no record of his reappointment in April, 1947, as a member of the

Fish Commission, and, accordingly, if the prayer for relief were dependent upon the defendant's present status, the attacked judgment would surely have to be affirmed.

All courts which have dealt with the legal issue arising out of dual office-holding have not employed the fiction of presumed resignation. A minority hold an incumbent ineligible for election or appointment to a second office until he takes affirmative action whereby he actually quits the first. Until his vacation of the first is duly evidenced, the second office is deemed forbidden to him. The courts which employ this view refuse to presume a resignation of the first office upon acceptance of the second. They insist upon an actual resignation, and, in the absence of one, regard the acceptance of the second office as void. The decisions are reviewed in 100 A. L. R. 1176. If a rule must be adopted which will enable the citizen readily to identify his public officials, this rule seems superior. One of the decisions which employed the rule of ineligibility is *Saint v. Allen*, 169 La. 1046, 126 So. 548, which arose out of the employment by the Louisiana Highway Commission of a member of the Louisiana Senate and two members of the Louisiana House of Representatives as attorneys for the commission. The court said:

"The important question in this case is whether the practice of employing members of the Legislature to perform services, for pay, in the executive department of the state government is forbidden by article 2 of the Constitution, viz.:

" 'Section 1. The powers of the government of the State of Louisiana shall be divided into three distinct departments — legislative, executive, and judicial.

" 'Section 2. No one of these departments, nor any person or collection of persons holding office in one of them, shall exercise power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.' "

The court, in holding that the employment was void, made an extensive review of the manner in which the doctrine of the separation of powers became a part of the federal and of the Louisiana constitutions. It said:

"In this instance the constitutional prohibition is being violated by some of the individual members of the Legislature, by accepting employment, at fixed salaries, to exercise powers or perform duties belonging to the executive department of the government. It can not be doubted that, if the Legislature had enacted a statute purporting to authorize or sanction that practice, the act of the Legislature would be violative of article 2 of the Constitution. It seems equally plain that the act of the individual members of the Legislature is violative of article 2 of the Constitution."

The court held that the members of the Louisiana legislature were ineligible for employment by the executive branch.

In *Attorney General v. Marston,* 66 N. H. 485, 22 Atl. 560, 13 L. R. A. 670, the court, in holding that one elected to the office of tax collector was ineligible during his term for the office of selectman, said:

"The defendant's acceptance of the office of selectman did not relieve him of the office of collector. The acceptance of an office by one disqualified to hold it by reason of holding an incompatible office is not necessarily a resignation of the prior office, unless it is made so by special statutory or constitutional provision. Consti. pt. 2, Arts. 94, 95."

The constitutional provisions just cited follow:

"Art. 94. No person shall be capable of exercising at the same time more than one of the following offices within this state, viz. judge of probate, sheriff, register of deeds; and never more than two offices of profit, which may be held by appointment of the (governor), or (governor) and council, or senate and house of representatives, or superior or inferior courts; military offices, and offices of justices of the peace excepted.

"Art. 95. (No person holding the office of judge of any court, (except special judges) secretary, treasurer of the state, attorney-general, commissary-general, military officers, receiving pay from the continent, or this state (excepting officers of the militia, occasionally called forth on an emergency) register of deeds, sheriff, or officers of the customs, including naval officers, collectors of excise, and state and continental taxes, hereafter appointed, and not having settled their accounts with the respective officers with whom it is their duty to settle such accounts, members of congress, or any person holding any office under the United States, shall at the same time hold the office of governor, or have a seat in the senate, or house of representatives, or council; but his being chosen and appointed to, and accepting the same, shall operate as a resignation of their seat in the chair, senate, or house of representatives, or council; and the place so vacated shall be filled up. No member of the council shall have a seat in the senate or house of representatives.)"

See also *McWilliams v. Neal et al.*, 130 Ga. 733, 61 S. E. 721, 14 Ann. Cas. 626 (annotated).

We need go no further than our own decisions to find one which embraced the rule of ineligibility. It is *Gibson v. Kay*, 68 Or. 589, 137 P. 864, which was based upon a petition for a writ of mandamus ad-

dressed to the State Treasurer to compel him to pay a warrant issued by the Secretary of State to a member of the state senate for services rendered by him as legal adviser to the Corporation Commissioner. It will be observed that the situation was substantially similar to that before the Louisiana court in *Saint v. Allen.* We now quote from the decision:

"There is a further reason for not upholding the claimant in the situation involved. It is said in Article III, Section 1, of the State Constitution that the powers of the government shall be divided into three separate departments, the legislative, executive, including the administrative, and the judicial; and no person charged with official duties in one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided. In any view of the case the functions of the corporation commissioner and his assistants, including stenographers and clerks, pertain to the administrative department of the government in which a member of the legislative department is forbidden to participate."

The writ was dismissed. See also *State v. Hoyt,* 2 Or. 246.

The legislative assembly for the Territory of Oregon in 1854 enacted a statute upon the subject of public office, three sections of which have a bearing upon the issue before us. The three sections can be found in Deady's General Laws of Oregon, 1845-1864, pages 708 and 709. The first of them reads as follows:

"Any person who shall receive a certificate of his election as a member of the senate or house of representatives of the legislative assembly, coroner, or * * * shall be at liberty to resign such office * * *; and when any vacancy shall happen in the office of member of the senate or house of representatives, by death, resignation, or otherwise, and a

session of the legislature is to take place before the next biennial election, the governor shall issue a writ of election, directed to the sheriff of the county, or district in which such vacancy shall happen, commanding him to notify the several judges in his county or district, to hold a special election, to fill such vacancy * * *."

The second section of the statute of 1854 provided:

"Resignations shall be made as follows:

"(1) By the secretary and treasurer of state, and by all officers elected by the legislative assembly, to the governor;

"(2) By all officers who hold their offices by election, to the officer or officers respectively authorized by law to order a special election to fill such offices respectively;

"(3) By all other officers holding their offices by appointment, to the body board or officer that appointed them."

The third section follows:

"Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office:

"(1) The death of the incumbent;

"(2) His resignation;
* * *

"(7) The decision of a competent tribunal declaring void his election or appointment."

In 1870 the state legislature amplified our laws pertaining to elections and office holding by the adoption of a statute which included the three above sections, apart from an occasional minor change to them. See Chapters VI and VII, Laws of Oregon 1870, pages 93 and 94. The changes consisted of alterations in punctuation, the occasional substitution of a synonym for a word appearing in the 1854 enactment, and the addition to the section first above quoted of the words "of

598

the counties composing the district.'' The words just quoted made provision for legislative districts consisting of more than one county.

As amended by the statute of 1870, the first of the above sections is now § 81-2001, O. C. L. A., and the second is § 81-2002. The third, apart from an amendment which was made to it by 1919 General Laws of Oregon, chapter 283, section 30, inconsequential to present purposes, is now § 81-2003.

■ It seems clear that the purpose of the above enactments, so far as they are applicable to a resignation by an incumbent, could be served only by a resignation evidenced by a writing. In adopting the above laws, the legislature evidently was opposed to the idea that the acceptance by a public official of a new office, incompatible with one presently held, constituted a resignation of the old office.

In 1930 Article IV, § 3, Constitution of Oregon, was amended. Prior to 1930 it read:

"The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may from time to time be divided by law."

The amendment added to the section the following:

"If a vacancy in the office of senator or representative from any county or district shall occur, such vacancy shall be filled as may be provided by law."

The amendment just quoted clearly authorized the legislature to provide by statute the method of filling a vacant legislative office, and also to specify the manner in which a legislative office may be vacated. Clearly, it authorized the legislature to adopt the very legisla-

tion which it had already adopted and which, as we have seen, left no room for presumed resignations.

We come now to *Lessard v. Snell,* 155 Or. 293, 63 P. (2d) 893. The plaintiff in that case, Dellmore Lessard, while a member of the state senate, accepted office as attorney for one of the state's administrative agencies. The purpose of the suit was to restrain the defendant, who was the Secretary of State, from declaring vacant the plaintiff's office as state senator. The plaintiff depended upon the doctrine of presumed resignation and also upon 1935 Oregon Laws, chapter 190, which said:

"Any vacancy occurring in the office of senator or representative from any legislative district within the state of Oregon, due to death or other disability, shall be filled by the county court * * *."

According to the averments of the complaint, which were admitted by the demurrer,

"the defendant, Earl Snell, as Secretary of State, contends that, under section 10, article 2, of the Constitution of this state, plaintiff is ineligible to serve in the thirty-ninth legislative assembly as state senator for the reason that plaintiff is holding a lucrative office under appointment and * * *."

The decision said:

"We are not unmindful of chapter 190, Oregon Laws for 1935, which makes it the duty of the secretary of state, when a vacancy occurs 'due to death or other disability' to notify the county commissioners of such vacancy. The pertinent inquiry, however, is: Who is to determine when such 'other disability' exists?"

The decision held that the Secretary of State was powerless to make the determination because Article IV, Section 11, Constitution of Oregon, makes each

house of our legislature the exclusive "judge of the election, qualifications, and returns of its own members." In so holding, the decision said:

"In view of this constitutional power vested in the legislature, it is clear that this court has no jurisdiction to determine the qualifications of the plaintiff as state senator. That is a matter which rests in the sole and exclusive jurisdiction of the state senate. It would, indeed, be a vain and idle thing for this court to render a decree which it has no power to enforce. More important, to pass upon the eligibility of plaintiff to the office of state senator would be an encroachment upon the constitutional prerogatives of a co-ordinate branch of the government. It would be wholly foreign to our constitutional system of government for the executive or judicial department to determine a matter expressly reserved for the legislature."

Following the announcement of the Lessard decision, and, obviously, for the purpose of rendering certain the circumstances which the Secretary of State, in the performance of his official duties, must deem a vacation of a legislative office, the 1937 legislative session adopted 1937 Oregon Laws, chapter 342, which is § 94-109, O. C. L. A. A previous paragraph of this opinion quotes the pertinent part of that act. It will be recalled that, in addition to recognizing that a legislator's term is ended when any of the following events occur, (1) death, (2) recall, or (3) disqualification legislatively determined, it specifies that a vacation of a legislator's office by resignation must be evidenced by a "written resignation" and that the latter must be "duly filed with the secretary of state."

■ It is reasonable to infer that the legislature, when it wrote the 1937 act, was prompted by a purpose to disapprove once more the doctrine of presumed resigna-

tions. It is clear that the legislature wished to render it certain that that rule should not be applied to a legislative office. It, therefore, in writing the 1937 act, specified that a resignation, in order to have the effect of ending a term, must be a "written resignation of a member duly filed with the secretary of state." It will be recalled that the New Hampshire court, in *Attorney General v. Marston,* supra, said:

> "The acceptance of an office by one disqualified to hold it by reason of holding an incompatible office is not necessarily a resignation of the prior office."

Our legislature, in writing the 1937 act, evidently entertained the same belief. And it will also be remembered that this court, in *Gibson v. Kay,* supra, deemed that the office of legal adviser to the Corporation Commission was "forbidden" to a member of the legislature by Article III, Section 1, Constitution of Oregon, so long as he continued to retain his legislative seat.

■ We believe that § 94-109, O. C. L. A., apart from its provisions in regard to death, recall and disqualification, deems that a member of the legislature continues to remain a member of that body unless he signs and files a resignation. It recognizes no implied or presumed resignations. Section 94-109 is as controlling upon the members of the legislature as upon anyone else, and by adopting that measure the legislature said that it would not deem the acceptance by a member of an administrative or judicial office as a presumed resignation of the legislative office. Obviously, the legislature meant that until the legislator rid himself of his legislative office by signing and filing a resignation, he should be deemed ineligible to any incompatible office. Evidently it approved the statement made by

this court in *Gibson v. Kay,* supra, which we have quoted.

Since 1854, as we have seen, Oregon legislation upon the subject of vacancy in public office has been adverse to the doctrine of presumed resignation. The enactments of 1854 and 1870 were applicable to all public offices. The 1937 act affirmatively disapproved the rule of presumed resignations, at least so far as a legislative office is concerned.

*Holman et al. v. Lutz et al.,* supra, and *State ex rel. v. Beveridge,* supra, were not affected by Article III, § 1, Constitution of Oregon, nor by § 94-109, O. C. L. A. We do not question the results reached in those two cases, but the foregoing represents our interpretation of the statutes and constitutional provisions applicable to this case.

■■ We have nothing to do with the wisdom of legislation. Our function is confined to the duty of interpreting what the lawmaker wrote. We believe that the foregoing puts into effect the legislative will. In view of the fact that Mr. Hill, the defendant, had not signed and filed a resignation of his legislative office, he was ineligible to membership upon the Fish Commission. His attempted acceptance of membership in that agency was void.

The judgment of the circuit court is affirmed.