Submitted September 30, reapportionment sustained October 27, 1981

In the Matter of the Apportionment of Senators
and Representatives under Article IV, § 6,
Oregon Constitution.

CARGO et al,
*Petitioners,*

*v.*

PAULUS,
*Respondent,*
GOLDSTEIN,
*Petitioner,*

*v.*

PAULUS,
*Respondent.*

(No. 77-5311, CA 15484, SC 27541)

635 P2d 367

David F. Cargo, Portland, for his petitioners.

Bob Goldstein, Portland, on his own behalf.

David B. Frohnmayer, Attorney General, Salem, for the respondent.

DENECKE, C. J.

Linde, J., filed a concurring opinion.

## DENECKE, C. J.

In *McCall v. Legislative Assembly,* 291 Or 663, 634 P2d 223 (1981), we declared a reapportionment statute enacted by the legislature to be contrary to the Oregon Constitution. Pursuant to the Oregon Constitution, we directed the Secretary of State to draft a reapportionment and return the draft to us. The Secretary has done this. We then announced we would accept petitions challenging the changes made by the Secretary but would not consider any claims which were part of the reapportionment statute adopted by the legislature.

Two petitions were filed. Some of the challenges made in the petitions were challenges which had previously been made or could have been made to those portions of the Secretary's draft that were part of the reapportionment statute adopted by the legislature. We will not consider those. Two other challenges, however, must be considered.

The Secretary's draft assigns half of the Senators, 15, those whose terms expire on January 14, 1985, to senatorial districts. The remaining senatorial districts will elect Senators in 1982. Petitioner Cargo contends that neither the Secretary nor the legislature has the power "to appoint" Senators and neither has the power to fill vacancies which, according to Cargo, will exist in every senatorial district when reapportionment becomes effective. The petitioner's solution is to have all 30 Senators elected in 1982.

Section 3 of Article IV provides:

"The senators and representatives shall be chosen by the electors of the respective counties or districts or subdistricts within a county or district into which the state may from time to time be divided by law. If a vacancy in the office of senator or representative from any county or district or subdistrict shall occur, such vacancy shall be filled as may be provided by law."

At the time the assigned Senators were "chosen," they were "chosen" by the electors from the districts into which the state was divided by law.

The second sentence in the quoted provision referring to "vacancy" was added after the adoption of the original Constitution. Referring to that amendment, we stated: "The amendment just quoted clearly authorized the legislature * * * to specify the manner in which a legislative office may be vacated." *State ex rel Hayden v. Hill,* 181 Or 585, 598, 184 P2d 366 (1947). ORS 171.050 provides a procedure whereby the legislatvie office can be filled when a vacancy occurs by death, written resignation, recall or disqualification by the house to which he or she was elected. OCLA 94-109 was a statute almost identical to ORS 171.050. In *State ex rel Hayden v. Hill, supra,* at 601, we held:

> "We believe that § 94-109, O. C. L. A. apart from its provisions in regard to death, recall and disqualification, deems that a member of the legislature continues to remain a member of that body unless he signs and files a resignation. It recognizes no implied or presumed resignations. * * *."

■     Even if we assumed, which we do not, that "vacancy" in the Constitution referred to a vacancy for a district or particular set of constituents rather than a vacancy in the office, there were no "vacancies" in this case.

The Secretary is not expressly authorized to assign Senators. Under Article IV, § 6(2)(c), however, in which the Supreme Court is authorized "to direct the Secretary of State" to draft a reapportionment of the Senators and Representatives in compliance with subsection (1), the unavoidable inference is that the Secretary is authorized to do what is necessary to draft a reapportionment plan that complies with Article IV, § 6(1); that is, she has the same power in this regard as the legislature. *Hovet v. Myers,* 260 Or 152, 161, 165, 489 P2d 684 (1971).

The Oregon Constitution envisages the assignment of Senators in a reapportionment. Section 4 of Article IV provides that Senators shall be elected for four years and:

> "The Senators shall continue to be divided into two classes, in accordance with the division by lot provided for under the former provisions of this Constitution, so that one-half, as nearly as possible, of the number of Senators shall be elected biennially.

The original subsection 4 provded for the original division of Senators:

> "* * * [P]rovided, however, that the senators-elect, at the first session of the legislative assembly under this constitution, shall be divided by lot into two equal classes, as nearly as may be; and the sets of senators of the first class shall be vacated at the expiration of two years, and those of the second class at the expiration of four years; so that one-half, as nearly as possible, shall be chosen biennially forever thereafter. And in case of the increase of the number of senators, they shall be so annexed by lot to one or the other of the two classes as to keep them as nearly equal as possible.

As this court observed in *McCall v. Legislative Assembly, supra,* the reapportionment constitutional amendment of 1952, Article IV, § 6(4), assigned Senators to districts. Prior legislatures in enacting reapportionment plans assigned Senators to districts. Oregon Laws 1899, p 6, § 5; Oregon Laws 1907, ch 269, § 4. These latter two enactments were not challenged in court but, together with the constitutional amendment, reflect a continuing view that an assignment of Senators is a valid part of a reapportionment plan and we so hold.

■ The other contention by petitioner Cargo, as well as by petitioner Goldstein, that must be considered is that the Secretary's draft does not comply with ORS 188.010. ORS 188.010 was enacted by the 1979 legislature and begins, "The Legislative Assembly or the Secretary of State, whichever is applicable, shall consider the following criteria when apportioning the state into congressional and legislative districts: * * *."

In *McCall v. Legislative Assembly, supra,* in which we reviewed the legislative reapportionment plan, several petitioners contended that the legislative plan was contrary to ORS 188.010. We could not consider that contention. One reason stated for our nonconsideration was "* * * it 188.010 did not deprive the 1981 legislature of power to enact chapter 261 as a later statute * * *." The reapportionment made by that "later statute," however, we declared null and void and we are now considering a product of the Secretary of State.

Article IV, § 6(2), however, does not grant us original jurisdiction to determine whether the Secretary's draft is in accordance with ORS 188.010. As we observed in *McCall v. Legislative Assembly, supra,* "* * * our original jurisdiction under art IV, section 6(2) is to review a reapportionment measure for compliance with section 6(1), including such surrounding constitutional mandates as must be respected in the interpretation and application of subsection (1). ORS 188.010 does not purport to be an authoritative interpretation of constitutionally mandated standards." *See,* also, *State ex rel Allen v. Myers,* 260 Or 170, 488 P2d 1184 (1971).

The draft of a reapportionment returned to us by the Secretary of State is in compliance with subsection (1) and shall be filed with the Governor pursuant to section 6(2)(d).

**LINDE, J.,** concurring.

There have been three census enumerations of Oregon's population and three legislative apportionments since this court in 1952 was assigned original jurisdiction to review such apportionments. Each occasion, in 1961, 1971, and 1981, brought to the surface one or more deficiencies embedded in the apportionment provisions of Oregon Constitution, Article IV, section 6.

In 1961, this court noted that it was impossible to follow the provision giving a senator and a representative to each county whose population exceeded one-half of the required quotient and still remain within the constitutional limits on the size of the two houses. *In re Legislative Apportionment,* 228 Or 562, 364 P2d 1004 (1961).

In 1971, the court found that an apportionment could not adhere to county lines as directed by Article IV, section 6(1), and also comply with the equal representation mandated by the federal 14th amendment. *Hovet v. Meyers,* 260 Or 152, 489 P2d 684 (1971).

This year's apportionment process showed further uncertainties in Article IV, section 6. The legislature was left in doubt whether it was legally required to match hold-over senators explicitly or implicitly with districts who

first elect a senator two years after the apportionment takes effect, with the result that this court invalidated the legislature's apportionment measure. *McCall v. Legislative Assembly,* 291 Or 663, 634 P2d 223 (1981). This led to the present apportionment by the Secretary of State. But the provisions leading to that apportionment have other flaws.

1). In giving this court original jurisdiction to review an apportionment expressly for compliance with article IV, section 6(1), the 1952 amendment created a question how far it also extended original jurisdiction (or "pendent jurisdiction") to consider compliance with legal requirements not stated in section 6(1). *See McCall v. Legislative Assembly, supra,* at 673.

2). Article IV, section 6(2) provides only 30 days, from September 1 to October 1, between the final date for filing challenges to a legislative apportionment measure and the date when the Secretary of State must file a new draft if the court invalidates the legislature's measure. This is not an adequate period of the preparation of briefs and responses, oral argument, study and discussion by the court, preparation of a written opinion, possible petitions for rehearing alleging errors in the opinion, and the Secretary's preparation of a new apportionment in the light of the court's opinion. Although the task was accomplished in this case, it might be unmanageable if a challenge to an apportionment were to hinge on disputed facts.

3). There is no prescribed procedure for the exercise of the Secretary of State's responsibility when called upon to prepare an apportionment. This is potentially the most far-reaching power exercised by that officer, defining a basic political right of everyone in the state for a decade. The law now does not clearly indicate whether this is to be done after an opportunity for public submission of evidence, views, and arguments bearing on the applicable criteria nor as a purely personal decision reached in secrecy upon consultation with staff members and perhaps a few other persons. Far less important decisions require prior

notice and opportunity for public comment.[1] But the schedule specified in Article IV, section 6(2) hardly allows time for this.

4). Partly for lack of prescribed procedures, this court may be called upon to test the Secretary of State's apportionment against allegations and arguments that may or may not have been presented to or otherwise considered by the Secretary. Indeed, the constitutional provisions alone are silent concerning the record on which the court is to undertake its review or whether challengers to an apportionment by the secretary of State are to be heard at all. Yet once it was recognized that the constitutional criteria could not be confined to matching a numerical ratio to the whole and partial county population quotients defined in section 6(1), it followed that challengers may call upon the court to do more than check the Secretary of State's arithmetic.

5). Finally, there is the question whether the Legislative Assembly can give the Secretary of State additional directions in preparing an apportionment beyond those stated in the constitution itself.

Some of these difficulties in the present scheme can only be overcome by constitutional amendment. Others can be resolved by statutes, or even by rules of this court or of the Secretary of State. Twenty years ago the Constitutional Revision Commission proposed to deal with the inadequacies of the present formulas by making adherence to county boundaries the first of several objectives to be considered rather than an ostensibly obligatory rule. The commission also proposed the appointment of an independent apportionment commission before each census which would prepare an apportionment plan for consideration by the next Legislative Assembly. Either the apportionment

---

[1] *See* ORS 183.335 (rulemaking procedure). It might be argued that the Secretary of State's promulgation of an apportionment is a "rule" under ORS 183.310(7):

"'Rule' means any agency directive, standard, regulation or statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of any agency...."

The time schedule of Article IV, section 6, however, is incompatible with that of rulemaking under ORS 183.335.

commission's plan or any other apportionment adopted by the legislature would become law, subject to judicial review and modification in such respects as this court might find constitutionally required. This would make the alternative to legislative agreement on an apportionment available before the legislature undertook its own apportoinment rather than only afterwards, as at present.

Because of subsequent experience under the 14th amendment and for other reasons, the exact text prepared by the Constitutional Revision Commission itself would not be satisfactory today.[2] Its suggestions for the criteria and the process of legislative apportionment, however, still might stimulate ideas for reform. In any event, reconstruction of the present unworkable provisions remains unfinished business for textual revision rather than for new judicial repairs after each ten-year interval of neglect.

---

[2] In the commission's proposal, Article IV would read in part as follows:

"Section 2. (1) The Legislative Assembly consists of a Senate and a House of Representatives.

"2) The number of Senators and the number of Representatives each shall be an odd number. The number of Senators may not be less than one-third nor more than one-half the number of Representatives. The number of Senators and Representatives shall be fixed by an apportionment, and they shall be apportioned by law among senatorial and representative districts as provided in this Article and not otherwise.

"Section 3. (1) An apportionment shall apportion the number of Senators and Representatives fixed thereby among senatorial and representative districts established thereby according to population based upon the final population figures for the state and subdivisions thereof resulting from the latest state-wide federal census. The population per Senator in all senatorial districts and the population per Representative in all representative districts, respectively, shall be as equal as practicable. The largest population per Senator or Representative, respectively, may not be more than twice the smallest population per Senator or Representative.

"(2) An apportionment shall divide the state into senatorial and representative districts. Districts shall consist of contiguous territory. In establishing districts consideration shall be given to:

"(a) County boundaries;

"(b) Other political, natural or other appropriate boundaries; and

"(c) Community of needs and interests by reason of geography, economy, transportation and communication.

"(3) An apportionment may not terminate the term of any Senator or Representative before his term would otherwise terminate. An apportionment shall include any provision necessary to comply with this subsection.

"(4) An apportionment is applicable first for the purpose of nominating and electing Senators and Representatives to serve at the regular session next following that nomination and election. For all other purposes, the next preceding apportionment is applicable until the commencement of that regular session.

"(5) An apportionment is not subject to veto by the Governor.

"Section 4. (1) The Legislative Assembly shall enact an apportionment after the date on which the final population figures for the state and subdivisions thereof resulting from a state-wide federal census become available and before July 1 next following that date, and may not enact an apportionment at any other time.

"(2) At the regular session next preceding the session at which the Legislative Assembly is required to enact an apportionment, the Legislative Assembly shall provide for an apportionment commission; but if the Legislative Assembly fails to do so, the Governor shall appoint an apportionment commission. A public officer or employe may not be a member of the commission. No more than a majority of the membership of the commission may be affiliated with the same political party. The commission shall prepare an apportionment based upon the final population figures referred to in subsection (1) of this section. Within 30 days after commencement of the session, at which the Legislative Assembly is required to enact an apportionment, the commission shall submit its apportionment to the Legislative Assembly and file a copy thereof with the state officer with whom Acts are filed.

"(3) If the Legislative Assembly fails to enact an apportionment as provided in subsection (1) of this section, the apportionment filed by the apportionment commission becomes law upon July 1 referred to in subsection (1) of this section."

Commission for Constitutional Revision: A New Constitution for Oregon 9-10.

Section 5 continued original Supreme Court jurisdiction to review an apportionment and order changes to conform to the constitution. The maximum 2:1 disparity in population allowable under section 3(1) is too wide under the 14th amendment. The requirement of odd numbers of members in both Senate and House of Representatives was designed to avoid tie votes on organization, but its extension to the larger body perhaps might be criticized for sacrificing the present possiblity of matching a senate district to two house districts.