No. 04-015

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 33

MIKE WHEAT, JON TESTER, and KEN HANSEN,

      Plaintiffs and Respondents,

   v.

BOB BROWN, in his official capacity as
Secretary of State for the State of Montana,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. BDV 2003-601,
                Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robert Cameron, Gough, Shanahan, Johnson & Waterman,
            Helena, Montana

      For Respondents:

            Peter Michael Meloy and Jennifer Hendricks, Meloy Trieweiler,
            Helena, Montana

Submitted on Briefs:  January 27, 2004

Decided:  February 18, 2004

Filed:

_____
                      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 This is an appeal by Secretary of State Bob Brown from the summary judgment issued by the First Judicial District Court, Lewis and Clark County, Honorable Jeffrey Sherlock presiding. In granting summary judgment, the District Court ruled, as a matter of law, that Senate Bill 258, Senate Bill 445 and Senate Joint Resolution 23 are "unconstitutional and of no force and effect." We affirm the judgment of the District Court.

## Background

¶2 As noted by the District Court, there are no disputed facts. The only issues are legal issues. The factual background is as follows:

¶3 Plaintiffs Mike Wheat, Jon Tester, and Ken Hansen (the "Senators") are members of the Montana Senate who were elected to office in 2002, for terms to run from January 1, 2003, through December 31, 2006.

¶4 Defendant Bob Brown is Secretary of State for the State of Montana. His primary responsibility is maintaining the official public records for the State of Montana and for conducting elections.

¶5 The complaint in this case arises out of the 2003 redistricting of the State of Montana into one hundred House districts and fifty Senate districts for election of the state Legislature. Specifically, the case below involves the assignment of "holdover senators" who were elected under the old districting system, but need to be assigned to redrawn districts under the new system. Senators Wheat, Tester, and Hansen are three of the six senators

whose district assignment by the Legislature differs from the Commission's assignment, as more fully explained below.

¶6      Montana's legislative districts are determined after each federal census. A Districting and Apportionment Commission (Commission) is appointed according to the terms of Article V, Section 14, of the Montana Constitution. Once the Commission is formed, it must prepare a plan for redistricting and submit that plan to the Legislature during its regular session. The Legislature then has thirty days to make recommendations and return the plan to the Commission. Within thirty days after receiving the Legislature's recommendations, the Commission must file its plan with the Secretary of State, and the plan becomes law.

¶7      A federal census was conducted in 2000. As required by the Montana Constitution, the legislative leadership appointed four members to the Commission, and because those members did not timely select a fifth member, the fifth member was appointed by the Montana Supreme Court. The Commission submitted its final plan to the Secretary of State on February 5, 2003. The Commission's submission to the Secretary of State included assignments of "holdover senators" to the newly-redrawn Senate districts.

¶8      The term "holdover senator" refers to those state senators who have served two years of their four-year terms at the time of redistricting, and are, therefore, not required to seek election at the general election held immediately following the districting plan becoming law. After each ten-year redistricting, twenty-five holdover senators must be assigned to newly-redrawn districts, where the holdover senators serve the final two years of their terms.

3

¶9     After the 2000 census, the Commission submitted its 2003 plan, along with proposed holdover senator assignments, to the Legislature for its "recommendations." In response, the Legislature passed § 5-1-116, MCA (also known as Senate Bill 258). Section 5-1-116, MCA, provides in relevant part that "[i]n the session in which the legislative redistricting plan is submitted to the legislature for recommendations, the legislature, by joint resolution, shall assign holdover senators to districts for the remainder of those senators' terms." The statute further provides that "[t]he districting and apportionment commission may not assign holdover senators to districts for the remainder of those senators' terms."

¶10    On April 9, 2003, Governor Martz signed into law Senate Bill 445, which provides in relevant part that "Section 3 of the districting and apportionment plan of 2003, the transition provision assigning holdover senators to new legislative districts, is repealed." On April 20, 2003, the Legislature filed with the Secretary of State Senate Joint Resolution 23, a joint resolution that had been approved by both houses, assigning holdover senators to the newly-drawn Senate districts.

¶11    The Commission's holdover assignments differ from the Legislature's with respect to six of the twenty-five holdover senators, affecting eleven districts. The differences are as follows:

| Name of Senator | Commission Assignment | Legislature's Assignment |
|---|---|---|
| Jon Tester | SD 15 | SD 17 |
| Ken Hansen | SD 17 | SD 16 |
| Brent Cromley | SD 25 | SD 26 |
| John Bohlinger | SD 28 | SD 27 |
| Mike Wheat | SD 32 | SD 33 |
| Sherm Anderson | SD 42 | SD 43 |

4

¶12 Commencing January 26, 2004, candidates for seats in the Montana Senate could file a declaration for nomination to run in the primary election. March 25, 2004, is the last day candidates for seats in the Montana Senate may file a declaration for the nomination to run in the primary election, and the statewide primary for the Montana Senate is June 8, 2004.

## Issue Presented

¶13 Does the task of legislative redistricting, as constitutionally assigned to the Montana Districting and Apportionment Commission, Article V, Section 14, of the Montana Constitution, include assigning "holdover" senators to districts under a new redistricting plan? Stated alternatively, does the Montana Constitution prohibit the Montana Legislature from enacting legislation establishing a procedure for assigning "holdover" senators to newly-drawn districts?

## Standard of Review

¶14 The applicable standard of review in appeals from summary judgment is de novo. *Danelson v. Robinson*, 2003 MT 271, ¶ 11, 317 Mont. 462, ¶ 11, 77 P.3d 1010, ¶ 11. When reviewing a district court's grant of summary judgment, this Court applies the same evaluation as the district court under Rule 56, M.R.Civ.P. *Danelson*, ¶ 11.

¶15 As legislative enactments, § 5-1-116, MCA, Senate Bill 445 and Senate Joint Resolution 23 are presumed constitutional, *Merlin Myers Revocable Trust v. Yellowstone County*, 2002 MT 201, ¶ 21, 311 Mont. 194, ¶ 21, 53 P.3d 1268, ¶ 21, and the party challenging the statute has the burden of establishing its unconstitutionality. *Harper v. Greely* (1988), 234 Mont. 259, 269, 763 P.2d 650, 656.

5

Discussion

¶16 We start the analysis with a review of Article V, Section 14, 1972 Montana Constitution, which provides as follows:

(1) The state shall be divided into as many districts as there are members of the house, and each district shall elect one representative. Each senate district shall be composed of two adjoining house districts, and shall elect one senator. Each district shall consist of compact and contiguous territory. All districts shall be as nearly equal in population as is practicable.

(2) In the legislative session following ratification of this constitution and thereafter in each session preceding each federal population census, a commission of five citizens, none of whom may be public officials, shall be selected to prepare a plan for redistricting and reapportioning the state into legislative districts and a plan for redistricting the state into congressional districts. The majority and minority leaders of each house shall each designate one commissioner. Within 20 days after their designation, the four commissioners shall select the fifth member, who shall serve as chairman of the commission. If the four members fail to select the fifth member within the time prescribed, a majority of the supreme court shall select him.

(3) Within 90 days after the official final decennial census figures are available, the commission shall file its final plan for congressional districts with the secretary of state and it shall become law.

(4) The commission shall submit its plan for legislative districts to the legislature at the first regular session after its appointment or after the census figures are available. Within 30 days after submission, the legislature shall return the plan to the commission with its recommendations. Within 30 days thereafter, the commission shall file its final plan for legislative districts with the secretary of state and it shall become law.

(5) Upon filing both plans, the commission is then dissolved.

¶17 The language of the Constitution clearly assigns the Commission the responsibility for redistricting, after receiving "recommendations" from the Legislature. The Constitution requires the Commission to develop and submit a "plan for legislative districts." The

6

Senators contend that no plan for redistricting could possibly be complete without identifying the correspondence between the new districts and the old districts. Having reviewed the text and history of Article V, Section 14, we agree.

History of Article V, Section 4 at the Constitutional Convention

¶18 Recognizing that the text of Article V, Section 14, of the Montana Constitution does not specifically mention "holdover" senators, we look to the transcripts of the constitutional convention relating to the adoption of this provision. The rule is well established that, in construction of a constitution, recourse may be had to proceedings of the constitutional convention. *School Dist. No. 12, Phillips County v. Hughes* (1976), 170 Mont. 267, 272, 552 P.2d 328, 331.

¶19 In 1972, the Constitutional Convention delegates were keenly aware that political differences had stymied most legislative attempts to redistrict. This state of affairs was recognized in the legislative committee's proposal, introduced by Delegate Skari, as follows:

> The Montana experience was that in 1965 the Legislature was unable to reapportion. About a dozen bills were introduced, and not a single one was accepted. Consequently, it fell to the federal District Court to reapportion the state. In 1971 the Legislature drew up one plan which was invalid because of a 37 percent variance. After working through the regular session [and] one special session, the Legislature finally came up with the present plan in the second special session . . . .

Mont. Const. Conv. Tr., Vol. IV at 682.

¶20 In response to this untenable situation, the Constitutional Convention assigned the duty of redistricting to a separate body, the Montana Districting and Apportionment

7

Commission. Noting the conflict of interest inherent in having the Legislature redistrict itself, Delegate Skari explained the purpose behind the Commission as follows:

> The majority report recommends the establishment of a commission on reapportionment and redistricting which would initiate a reapportionment and redistricting plan which would essentially–which would be appointed by the legislative leadership but would be somewhat independent and autonomous. *It would, in effect, bypass the Legislature from this point on.*

Mont. Const. Conv. Tr., Vol. IV at 682 (emphasis added).

¶21    In recognition of the inherent difficulties in having the legislators redistrict, Delegate Blend stated: "I do not think that the Legislature is psychologically fitted to reapportion itself. I think it's too lengthy a program for them to undertake for something that should be accomplished by a nonpartisan, or at least impartial group." Mont. Const. Conv. Tr., Vol. IV at 685. In a similar vein, Delegate Schiltz observed that, "the Legislature is totally unable to reapportion itself. It has too many interests that are not necessarily in accord with the broad interests of the state, and this kind of a commission would do it." Mont. Const. Conv. Tr., Vol. IV at 720.

¶22    With the advent of single-member districts and residency requirements, it was anticipated that the redistricting would become even more thorny in the future. Mont. Const. Conv. Tr., Vol. IV at 682 (Delegate Skari). The Senators suggest that Delegate Skari's observation about residency requirements illustrates that the Convention delegates were, in fact, addressing the issue of "holdover" senators since residency requirements are relevant to the redistricting process only as it concerns assignment of holdovers. Secretary Brown does not dispute this assertion.

8

¶23    It is clear from the transcripts of the Constitutional Convention that, in recognition of the Legislature's inability to redistrict itself, the Convention assigned the task of redistricting to the Commission–an independent, autonomous entity–and limited the Legislature's role to that of making "recommendations."  We now turn to the history of the implementation of Article V, Section14.

History of Implementation of Article V, Section 14

¶24    As the District Court aptly noted, the conclusion that the assignment of holdover senators is part and parcel of the redistricting process is not a novel approach.

¶25    The Constitution requires that within ninety days after each decennial census, the Commission shall file its final plan for congressional districts with the Secretary of State. Since the 1972 Constitutional Convention, there have been three federal censuses:  in the years 1980, 1990 and 2000.  In 1980, there was a controversy over whether senators should be held over at all.  In response to an inquiry from the Senate, the Attorney General issued an opinion stating that the Commission had "inherent authority" to resolve "details" such as "how holdover senators fit into the reapportionment plan."  40 Mont. Op. Atty. Gen. 7 (1983).  The 1983 Senate subsequently criticized the Commission for failing to assign holdovers in its draft plan.[1]

---

[1]On the matter of holdovers, the Senate stated:

WHEREAS, each Montana Senate district must have an identifiable representative; and
WHEREAS, the Commission failed to assign Senators to new districts who have terms which expire in 1986; and

. . .

¶26 After the federal census in 1990, the Commission honored the Attorney General's instructions and included assignments for holdover senators, including then-Senator Bob Brown, as part of its plan. The plan was filed and became law. Although the history of implementation does not address the ultimate issue of constitutionality, it certainly illustrates decades of consensus that the Commission's authority to redistrict necessarily includes the assignment of holdover senators.

------

WHEREAS, the Attorney General of the state of Montana has issued an opinion to the President of the Montana Senate indicating the necessity of designating districts for holdover senators whose terms do not expire until 1986; and

. . .

WHEREAS, Montana Constitution Article V, section 14(2), does not provide for any regulation or control over the Commission; . . .

. . .

NOW, THEREFORE, BE IT RESOLVED BY THE SENATE OF THE STATE OF MONTANA:

. . .

. . . that the Montana Districting and Apportionment Commission designate senatorial districts for each senator whose term expires in 1986 in such a manner that each Senate District have an identifiable representative; and

BE IT FURTHER RESOLVED, that the Montana Districting and Apportionment Commission establish election dates for the Senate Districts consistent with Montana Constitution Article V, section 3; and

BE IT FURTHER RESOLVED, that if there is insufficient time for the Commission to accomplish such task that the Montana Supreme Court assume the responsibility of redistricting and reapportionment; and

BE IT FURTHER RESOLVED, that copies of the following documents be attached to this resolution:

(1) Attorney General Opinion to Senator Stan Stephens dated January 21, 1983; Attachment C, 3 pages.

Sen. Res. 4 (1983).

The 2003 Legislation

¶27     Citing the proposition that "the people, through the legislature, have plenary power, except in so far as inhibited by the Constitution," *Missouri River Power Co. v. Steele* (1905), 32 Mont. 433, 438, 80 P. 1093, 1094, Secretary Brown contends that, since Article V, Section 14, is silent as to "holdover" senators, the Legislature has constitutional leeway to transfer the authority to assign holdovers from the Commission to the Legislature, as it did in passing § 5-1-116, MCA, set forth below:

> (1) In the session in which the legislative redistricting plan is submitted to the legislature for recommendations, the legislature, by joint resolution, shall assign holdover senators to districts for the remainder of those senators' terms. The districting and apportionment commission may not assign holdover senators to districts for the remainder of those senators' terms. The assignments must occur after the plan becomes law.

> (2) In making the assignments provided for in subsection (1), the legislature, if possible, shall assign a holdover senator to a district based upon the greatest percentage of population in the new district that voted for the senator in the prior election and the senator's residence.

> (3) For the purposes of this section, a holdover senator is a senator who is not required to seek election at the general election held immediately following the districting plan becoming law.

¶28     Secretary Brown argues that the Montana Constitution mandates the Legislature enact legislation necessary to "insure the purity of elections and guard against abuses of the electoral process." Art. IV, Sec. 3, Mont. Const. The Secretary cites to Delegate Vermillion's explanation of the phrase "insure the purity of an election":

> This is very broad language which would leave the Legislature the power to pass whatever statutes it deems necessary, much as it has in the election laws now, to make sure that there are no frauds perpetrated upon the

11

> people of Montana in elections.  It is purposely kept broad to give the Legislature power to keep the elections free of fraud.

Mont. Const. Conv. Tr., Vol. III at 450.  Two aspects of this commentary are significant. First, having used "election laws *now*" as the point of reference, it is clear that the power conferred upon the Legislature in Article IV, Section 3, was designed to be commensurate with the then-existing election laws.  The election laws both prior and subsequent to the adoption of the 1972 Constitution address the *mechanics* of the election process and do not address the legislative redistricting process.  Title 13, Mont. Code Annotated.  Secondly, the focus of Article IV, Section 3, as characterized by Delegate Vermillion, was to "make sure that there are no frauds perpetrated upon the people of Montana in elections."  Applying those principles to the issue at hand,  it is clear that § 5-1-116, MCA, does not address the mechanics of the election process.  Furthermore, it is not at all apparent how leaving the power to assign holdovers with the Commission would perpetrate a fraud on the electors thereby necessitating the transfer of that power to the Legislature to "ensure the purity" of an election.

¶29    The Secretary devotes considerable time to extolling the merits of the objective statutory criteria for assigning holdovers embodied in § 5-1-116, MCA.  We need not, however,  address the specifics of these criteria since the issue presented is not whether the specific criteria are appropriate or well-intended.  Rather, the more fundamental constitutional issue is whether the Legislature can inject itself into the redistricting process through the adoption of *any* criteria pertaining to holdovers.

The Oregon Decision

12

¶30 It appears the Oregon Supreme Court is the only other appellate court that has addressed the question of constitutional power to assign holdovers after a redistricting. *Cargo v. Paulus* (Or. 1981), 635 P.2d 367.

¶31 As of 1980, redistricting under the Oregon Constitution was performed in the first instance by the legislature. In 1980 the Oregon legislature's redistricting plan designated half of the thirty senatorial districts as "open" and the other half as filled. The plan, however, did not designate a correspondence between the heldover senators and the filled districts. Thus, those senators were left serving the remainder of their terms without a clearly identified constituency. The Oregon supreme court held that each senator must be identified with a particular district. *McCall v. Legislative Assembly* (Or. 1981), 634 P.2d 223. As required by the Oregon Constitution, the court directed the secretary of state to submit a revised plan.

¶32 The revised plan came before the court in *Cargo v. Paulus* in which the intervenors challenged the secretary's assignment of holdover senators. The Oregon court thus had to decide whether Oregon recognized holdover senators at all or whether all senate seats would be declared vacant. The court held that no senator's term should be shortened.

¶33 The Oregon court then had to decide whether the secretary had the authority to assign the holdovers as part of the redistricting plan. Although the Oregon Constitution was silent as to the assignment of holdover senators, it did authorize the court to direct the secretary of state to draft a plan. The Oregon court held that "the unavoidable inference is that the Secretary is authorized to do what is necessary to draft a reapportionment plan . . . ." *Cargo*, 635 P.2d at 369. Because the court had decided that the Oregon Constitution "envisages the

assignment of Senators in a reapportionment," *Cargo,* 635 P.2d at 369, rather than shortened terms, it followed that making the assignments was part of planning for reapportionment and redistricting. On an historical note, the court observed that Oregon had previously enacted two reapportionment plans which assigned senators to districts, thereby reflecting "a continuing view that an assignment of Senators is a valid part of a reapportionment plan and we so hold." *Cargo*, 635 P.2d at 369. This parallels the situation in Montana which, as noted earlier, also has a history of enacting redistricting plans which assign holdover senators. As a result of *Cargo*, Oregon's Constitution has since been amended, and as of 1986 it expressly refers to holdovers and requires that they be assigned as part of redistricting.

¶34    Although the Montana Constitution places the redistricting authority with the Districting and Apportionment Commission rather than the Secretary of State, we, like the District Court, find the *Cargo* reasoning to be persuasive.

¶35    Having reviewed the text of Article. V, Section 14, and the Constitutional Convention transcripts, we conclude that Article V, Section 14's mandate that the Commission effect redistricting is self-executing and that, as the history of implementation illustrates, the power to assign holdover senators to districts is an inherent part of the redistricting process. By granting redistricting authority to the Commission under Article V, Section 14, the Constitution denied the Legislature any latitude to invoke its plenary powers. The legislation designed to transfer the power to assign holdover senators from the Commission to the Legislature violates Article V, Section14, of the Montana Constitution.

¶36 The District Court's well-reasoned opinion is hereby affirmed. Senate Bill 258 (codified as § 5-1-116, MCA), Senate Bill 445 and Senate Joint Resolution 23 are hereby declared unconstitutional and of no force and effect.


/S/ W. WILLIAM LEAPHART


We concur:


/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE