**Gwendolyn J. WITHERS and Sava Grujich, Plaintiffs,**

v.

**EQUIFAX RISK MANAGEMENT SERVICES, a division of Equifax Credit Information Services, Inc., Defendant.**

No. 98 C 4640.

United States District Court, N.D. Illinois, Eastern Division.

March 3, 1999.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Edelman & Combs, Chicago, IL, Charley Hoon Lee, Edelman & Combs, Chicago, IL, for plaintiffs.

Paul C. Ziebert, Ross & Hardies, P.C., Chicago, IL, David Luther Hartsell, Kilpatrick Stockton LLP, Atlanta, GA, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs filed this putative class action against Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiffs allege that Equifax Risk Management Services ("Equifax") mailed Plaintiffs deceptive collection letters that overshadowed their rights under the FDCPA. Currently before the Court is Plaintiffs' motion for partial summary judgment on liability issues. For the reasons set forth below, Plaintiffs' motion is granted.

### FACTS

The genesis of this dispute can be traced to two letters that Equifax mailed to Plaintiffs. On April 6, 1998, Equifax sent plaintiff Sava Grujich the following notice:

DEAR SAVA GRUJICH:

AS INDICATED ABOVE, YOU HAVE FAILED TO REMIT THE FULL SERVICE CHARGE DUE ON YOUR ACCOUNT DESPITE A PREVIOUS NOTICE.

TO ENSURE THAT YOUR OBLIGATION IS POSTED AS 'PAID IN FULL,' AND TO CLEAR THIS ITEM FROM OUR COMPUTER FILES, PLEASE REMIT THE REMAINING AMOUNT DUE WITH THE BOTTOM PORTION OF THIS LETTER IN THE ENCLOSED REPLY ENVELOPE.

EQUIFAX ... THANK YOU IN ADVANCE FOR YOUR ATTENTION TO THIS AND YOUR CONTINUED PATRONAGE AT SERVICE MERCHANDISE.

Upon Victoria's Secret's request, Equifax mailed Gwendolyn Withers the following dunning letter on April 21, 1998:

Dear Ms. Withers:

Your check ... was returned by your bank unpaid because of NON–SUFFICIENT FUNDS. Additionally, you have incurred a $25.00 service charge which our client imposes for returned checks. This balance of $76.72 which you owe has now been assigned to EQUIFAX ... FOR COLLECTION.

This information has also been reported to Equifax Check Services whose check authorization and verification services are widely used by banks and business establishments nationally as a basis for check acceptance.

EQUIFAX ... urges you to promptly respond to this notice. IF THE BANK RETURN CODE ALLOWS, YOUR CHECK WILL BE REPRESENTED TO YOUR BANK. If the above information concerning this check is incorrect, please advise us so that we may correct our records and resolve this matter.

THIS WILL BE CLEARED FROM OUR COMPUTER FILE WHEN IT IS PAID. IF YOU PAY BY DIRECT MAIL, CHECK WITH YOUR BANK BEFORE SENDING A CERTIFIED CHECK FOR THE FULL AMOUNT OF $ 76.72 TOGETHER WITH THE BOTTOM PORTION OF THIS LETTER TO EQUIFAX ... WHOSE ADDRESS APPEARS BELOW.

On the back of both letters, Equifax posted what is commonly referred to as the "validation notice" required by the FDCPA, as well as certain disclosures required by the identified states' laws:

### [VALIDATION NOTICE]

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office [sic] in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor....

### ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for ten (10) days unless you provide written confirmation of the request postmarked or delivered within seven (7) days of such request. You may terminate this request by writing to the collection agency.

### ADDITIONAL INFORMATION FOR COLORADO RESIDENTS

If you notify our agency in writing to cease contacting you by telephone at your place of employment, no further contact shall be made. If you refuse to pay the debt or wish our agency to cease further communication and you so advise our agency in writing, we shall not communicate further with you except: A. to advise you we intend to invoke specific remedies permitted by law or that we may invoke specified remedies which we ordinarily invoke; B. to advise you our efforts are being terminated....

Plaintiff Withers contends that the language in the body of her letter overshadows and contradicts her right to contest the debt's validity within 30 days. Specifically, Withers claims that the effect of demanding a "prompt response" in conjunction with Equifax's statement that "[t]his information has also been reported to Equifax Check Services whose check authorization and verification services are widely used ... nationally," and that "THIS WILL BE CLEARED WHEN PAID," renders the validation notice ineffective.

Both Plaintiffs take issue with the letters' "ADDITIONAL INFORMATION" sections, claiming that these statements convey the impression that only Massachusetts and Colorado residents have the right to direct debt collectors to cease certain communications, even though the FDCPA provides this right to all consumers.

In response, Equifax contends that the language in Wither's letter neither overshadows nor contradicts the validation notice; that the "ADDITIONAL INFORMATION FOR MASSACHUSETTS RESIDENTS" is not deceptive or misleading; and that the Court should excuse any confusion created by its printing of the "ADDITIONAL INFORMATION FOR COLORADO RESIDENTS" as a bona-fide error of law. Moreover, Equifax challenges Grujich's standing to sue because he has not demonstrated that his debt arose from a transaction "primarily for personal, family, or household pur-

poses," as required by the FDCPA. 15 U.S.C. § 1692a(5).

## ANALYSIS

### I. *SUMMARY JUDGMENT STAN-DARDS*

Summary judgment is appropriate only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence in a light most favorable to the non-moving party, *see Cincinnati Ins.*, 40 F.3d at 150, and draw all reasonable inferences in the non-movant's favor. *Kirk v. Federal Prop. Management Corp.*, 22 F.3d 135, 138 (7th Cir. 1994). However, evidence that is merely colorable, is not significantly probative, or merely raises "some metaphysical doubt as to the material facts," does not satisfy summary judgment standards. *Liberty Lobby*, 477 U.S. at 261, 106 S.Ct. 2505.

### II. *THE FDCPA*

The FDCPA was enacted to curb specific behavior: unscrupulous collection activities undertaken by debt collectors. To achieve this goal, the FDCPA requires debt collectors to include an effective validation notice informing debtors that they have thirty days to dispute the validity of a debt. *Gammon v. Joseph H. Belzer, P.A.*, 1997 WL 189291, at * 3 (N.D.Ill. Apr.11, 1997). "A debt validation notice, to be valid, must be effective and it cannot be cleverly couched in such a way as to eviscerate its message." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996).

#### A. *The Withers' Letter*

After reviewing Equifax's letter to Withers, we find that the unsophisticated consumer would be confused as to her rights under the FDCPA. *Gammon v. GC Serv. Ltd.*, 27 F.3d 1254, 1257 (7th Cir. 1994) (relying upon unsophisticated consumer standard to protect "the consumer who is uninformed, naive, or trusting"); *Avila*, 84 F.3d at 226 (unsophisticated consumer is "low, close to the bottom of the sophistication meter."). At first glance the letter appears relatively mild, as it neither demands immediate payment nor threatens suit unless Withers responds within thirty days. *Miller v. Payco–General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991) (demand that debtor respond "immediately" or "now" directly contradicts validation notice); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991) (threat to sue within ten days would induce a reader "to overlook his statutory rights to dispute the debt within thirty days."). However, Equifax doesn't need to resort to these obviously improper tactics because by placing the debtor's name on their nationwide "bad check" list until payment is remitted, the debtor is already behind the eightball and must act to alleviate, as opposed to avoid, the consequences. It is almost as if Equifax struggled to eliminate phraseology previously ruled offensive, while maintaining its ability to coerce the debtor into paying immediately. But in doing so, Equifax unfortunately crossed the line set by the FDCPA.

The letter would lead the unsophisticated consumer to believe that, until she pays the debt, her name will remain in the files of Equifax and Equifax Check Services, "whose check authorization and verification services are widely used by banks and business establishments nationally as a basis for check acceptance." While Equifax professes that it only included Equifax Check Services' impressive nationwide credentials to introduce the debtor to their services, clearly the unsophisticated consumer is intended to surmise that her ability to write checks—"a fundamental financial transaction"—will be impaired until she remits payment. *Ozkaya v. Telecheck Services, Inc.*, 982 F.Supp. 578, 584

(N.D.Ill.1997) (explaining that "Telecheck's warning that 'any delay' in payment 'may affect your ability to use checks' could confuse the unsophisticated consumer because it fails to explain how this comports with her thirty-day right to contest the debt.") Thus, the letter achieves its desired effect—to convince the consumer to disregard her FDCPA rights and pay immediately—without using patently offensive language

However, if the debtor challenges the validity of the debt within thirty days, Equifax is required to cease all efforts to collect the debt. 15 U.S.C. § 1692g(b). Equifax's letter does not explain how Equifax's right to post the debtor's name on its "bad check" list coexists with the debtor's right to challenge the debt's validity within 30 days. *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997) (FDCPA liability arises where debt collectors fail to explain how their rights coexist with the debtor's right to verify the debt). The unsophisticated consumer is left with the definite and incorrect impression that, regardless of the validity of the debt, the fastest and perhaps only way to redeem her check-writing privileges is to pay the debt.

We find that the letter's failure to explain these rights renders the letter confusing and actionable. As Chief Judge Posner explained, "the unsophisticated consumer is to be protected against confusion whatever form it takes." *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997). In the end, it is the confusing, overall effect of the letter that controls our analysis. *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1059 (7th Cir.1999). Therefore, we grant plaintiff Withers' motion for summary judgment on this point.

### B. Plaintiff Grujich has Standing Under the FDCPA

■ Equifax argues that this Court does not have subject matter jurisdiction over Grujich's claim because he has not established that his debt arose from the purchase of goods for "personal, household, or family" purposes. 15 U.S.C. § 1692a(5). Specifically, Equifax points to Grujich's deposition testimony where he concedes that he cannot recall exactly what he purchased from Service Merchandise. We find that this is insufficient to create a genuine issue of material fact as to the nature of the transaction.

Grujich has presented evidence that at all relevant times he was a maintenance/service person for United Airlines, that he is not a business man or owner, he is not required to purchase business items for which he is reimbursed or otherwise compensated by his employer, and that he has never taken "business expense" deductions. Grujich testified that the only item he recalled purchasing from Service Merchandise in 1997 to 1998 is a duffle bag—a purely personal use item. More importantly, Grujich paid for the item with a personal check, and Equifax's letter is addressed to Grujich and was mailed to his home.

Grujich has submitted evidence demonstrating that his purchase was a personal rather than business transaction. Conversely, Equifax has come forward with mere speculation that because Grujich cannot unequivocally identify the item he purchased, there is a possibility that his purchase was for business purposes. However, the Supreme Court has made clear that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Speculation is insufficient; rather, in order to establish a genuine issue for trial, Equifax is required to present evidence. Because Equifax has not produced any evidence in support of its claim, we find that Grujich has standing to sue under the FDCPA.

### C. The Massachusetts and Colorado Notifications

■ This Court has already determined that inclusion of the identical Colorado No-

tification improperly leads consumers in other states to believe that Colorado residents alone have the right to notify the debt collector in writing to cease contacting the debtor by telephone at the place of their employment. *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1138–39 (N.D.Ill. 1998) (finding that the letter's inclusion of selected state law on a consumer's right to request cessation of contact that failed to include analogous FDCPA provisions was misleading and unfair). Nevertheless, Equifax argues that summary judgment is not warranted because a) unlike the Colorado Notification, the Massachusetts Notification describes rights not afforded to Illinois residents and b) this Court should excuse Equifax's inclusion of the Colorado Notification as a bona fide error of law. We disagree.

First, the Massachusetts Notification differs from the Colorado Notification (and all consumers' rights under the FDCPA) in only one regard: while all consumers have the right to notify debt collectors *in writing* to cease contacting them at their place of employment, Massachusetts' residents can trigger this right *both orally and in writing*. This distinction is so insubstantial that Equifax's Massachusetts Notification does not escape the impact of this Court's reasoning in *Jenkins*.

Next, we reject Equifax's attempt to seek shelter under the bona-fide error of law exception to FDCPA liability. *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir.1997) (FDCPA absolves a debt collector whose "violation was unintentional and occurred despite the existence of reasonable procedures to prevent it."). Under this exception, the debt collector must prove both that the violation was unintentional and that the error occurred despite the maintenance of procedures reasonably adapted to avoid any such error. *Id.;* 15 U.S.C. § 1692k(c). Drawing every inference in Equifax's favor, we find that it cannot make such a showing.

Prior to Equifax's issuance of Plaintiffs' letters, three district courts had ruled on the validity of including the Colorado Noti-

fication without explaining all consumers' rights under the FDCPA. The first decision, *Brown v. ACB Business Serv., Inc.*, 1996 WL 469588, at *3 (S.D.N.Y.1996), found that, although "the least sophisticated consumer could be misled as to the scope of his or her rights by the state disclosures," the debt collector would not be held liable under the FDCPA for failing to clarify this confusion because "Congress did not include in the FDCPA a mandatory notification provision with respect to the FDCPA itself."

Shortly thereafter, the Western District of Wisconsin agreed that the Colorado Notification, standing alone, was confusing to debtors, but rejected the *Brown* court's conclusion that courts were constrained from requiring debt collectors to inform all consumers of their FDCPA rights when including the Colorado Notification. *See D. Slotten v. Collections Unlimited, Inc.*, No. 96 C 0920 (W.D.Wis. Feb. 26, 1997) (Debt collector's failure to explain a debtor's rights in light of the Colorado Notification violated the FDCPA.). Similarly, in *Jenkins v. Union Corp.*, this Court ruled that the inclusion of the Colorado Notification alone would confused unsophisticated consumers and, therefore, debt collectors must explain that these rights are afforded to all consumers under the FDCPA. 999 F.Supp. at 1138–39.

■ Although Equifax argues that this split of authority justified its continued use of the Colorado Notification without further explanation, we disagree. Initially, we note that all three courts to address the issue found the inclusion confusing to consumers. More importantly, *nine months before* Equifax issued Plaintiffs' letters, Equifax agreed, as part of a court negotiated settlement, to discontinue sending letters in the form at issue. *Young v. Equifax*, No. 97 C 3289 (N.D.Ill. July 25, 1997). The evidence shows that, despite this agreement, Equifax allowed some of its letters to retain the offending Notification without further clarification. We find that Equifax cannot demonstrate that its viola-

tion was unintentional, and therefore, cannot satisfy the bona-fide error of law standard.

## CONCLUSION

Plaintiffs have demonstrated that Equifax's inclusion of the Massachusetts and Colorado Notifications, without explaining their relation to all consumers' rights, violates the FDCPA. Because Equifax had agreed to rectify the confusion created by the inclusion of these provisions long before it mailed Plaintiffs' letters, the bona-fide error of law exception to liability does not apply. Finally, Mr. Grujich has produced sufficient evidence to establish that his transaction is covered by the FDCPA. Therefore, Plaintiffs' motion for partial summary judgment (19–1) is granted in its entirety.

Given our rulings herein, and after careful review of the relevant pleadings, Plaintiffs' motion for class certification is hereby granted (20–1). *See Keele v. Wexler*, 149 F.3d 589 (7th Cir.1998) (affirming trial court's grant of class certification in FDCPA action); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D.Ill.1998); *Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D.Ill.1998) (finding that class certification was warranted even though plaintiff could not prove that all possible class members had incurred personal, as opposed to business, debts).

The Clerk of the Court is directed to enter judgment on liability, pursuant to Fed.R.Civ.P. 58, in favor of Plaintiff class and against Defendant. The Court will retain jurisdiction to address the remaining issues of appropriate damages, attorneys' fees, and notice to the class. A status hearing will be held on March 31, 1999 at 9:00 a.m. to address these issues.