Gulender ("Rose") OZKAYA, individually and on behalf of all others similarly situated, Plaintiff,

v.

TELECHECK SERVICES, INC., Defendant.

No. 97 C 3943.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 23, 1997.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Adam Goodman, Edelman & Combs, Chicago, IL, for Plaintiff.

George William Spellmire, David Matthew Schultz, John Matthew Foley, Hinshaw & Culbertson, Chicago, IL, David G. Russell, Grace F. Woods Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

CASTILLO, District Judge.

Plaintiff Gulender Ozkaya filed this putative class action on May 30, 1997, alleging that defendant Telecheck Services, Inc. violated the Fair Debt Collection Practices Act ("FDCPA" or "the Act"). Ozkaya claims that her right to dispute a car repair debt was overshadowed by language Telecheck used in a dunning letter, and by the fact that Telecheck obscured the date of the letter in a

bar code. Ozkaya also claims that Telecheck improperly charged a $25.00 service fee because she stopped payment on a check to the creditor. Before the Court is Telecheck's motion to dismiss Ozkaya's complaint under Fed.R.Civ.P. 12(b)(6).

## RELEVANT FACTS

On March 19, 1997, Ozkaya wrote a check in the amount of $1041.55 to a car dealership for repair services. Ozkaya stopped payment on the check when she realized that her car had not been properly repaired. Shortly afterward, Ozkaya received a form dunning letter from Telecheck attempting to collect payment:

> Telecheck has purchased the check referenced in this notice. As a result, we have entered your name in our NATIONAL COMPUTER FILES. Until this is resolved, we may not approve your checks or the opening of a checking account at over 90,000 merchants and banks who use Telecheck nationally.

> We have assigned your file to our Recovery Department where it will be given to a professional collection agent. Please be aware that we may take reasonable steps to contact you and secure payment of the balance in full.

> In order for us to update your file quickly, send a cashier's check or money order for the **Total Amount Due** in the return envelope provided.

> It is our intent to resolve this as quickly and as amicably as possible for all parties concerned. Any delay, or attempt to avoid this debt, may affect your ability to use checks.

Compl. Ex. A. Telecheck added a $25.00 service charge to the amount of the debt, listed as a "fee" at the top of the letter.

At the bottom of the letter, the following language appeared: **"See reverse for important legal notice and corporate address."** The reverse side contained a standard debt validation notice:

> This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify Telecheck within thirty (30) days of receipt of this notice that you dispute the validity of this debt, or any portion thereof, Telecheck will assume the debt to be valid.

> If you notify Telecheck in writing that you dispute the debt, or any portion thereof, listed on this notice within the thirty (30) day period, Telecheck will obtain verification of the debt and will mail you a copy of such verification.

*Id.* We must decide whether the contents of this letter give rise to a claim for relief under the FDCPA.

## LEGAL STANDARDS

### A. Motions to Dismiss

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.,* 892 F.2d 583, 586 (7th Cir.1989). The court must view all facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996); *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). Any ambiguities are likewise resolved in the plaintiff's favor. *Dawson,* 977 F.2d at 372. A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts warranting relief. *Triad Assoc.,* 892 F.3d at 586. With these standards in mind, we address the sufficiency of Ozkaya's FDCPA claims.

### B. FDCPA Claims

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To this end, the Act sets certain standards for communications that debt collectors send to debtors. Among them are a requirement that debt collectors advise debtors of their rights to dispute the debt and demand verification, *see* 15 U.S.C. § 1692g, and a prohibition against collecting a debt through "unfair or unconscionable means," such as slapping the debtor with unauthorized fees beyond the amount in arrears, *see id.* § 1692f(1).

The Seventh Circuit evaluates communications from debt collectors "through

the eyes of an unsophisticated consumer." *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483–84 (7th Cir.1997); *see Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996). The unsophisticated consumer is a "hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading."[1] *Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994). This presumes a level of sophistication that "is low, close to the bottom of the sophistication meter," *Avila*, 84 F.3d at 226, and "protects the consumer who is uninformed, naive, or trusting," *Jang*, 122 F.3d at 483–84 (quoting *Gammon*, 27 F.3d at 1257). Still, the standard "admits an objective element of reasonableness," which "protects debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Id.* (citation and internal quotations omitted).

## ANALYSIS

### I. Ozkaya States a FDCPA Claim Under Section 1692g

■ Ozkaya contends that Telecheck violated FDCPA section 1692g's requirement to explain her rights to verify and dispute the debt. Specifically, she claims that Telecheck's request for payment "quickly" and without "delay," along with its statement that it may hamper Ozkaya's ability to write checks or open a checking account until the matter is resolved, "overshadowed" her verification rights by interposing a strong incentive not to exercise them.

■ The validation notice required by section 1692g must inform the consumer that he or she has 30 days after receipt of the notice to dispute the debt, after which time it is assumed valid. *See* 15 U .S.C. § 1692g(a). "A debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to .eviscerate its message." *Chauncey v. JDR Recovery Corp.*, 118 F.3d

516, 518–19 (7th Cir.1997) (citing *Avila*, 84 F.3d at 226). Even if a letter properly contains the information mandated by section 1692g(a), "the debt collector may not overshadow or contradict that information with other messages sent with the validation notice or within the validation period." *Id.* at 518. The information. sent along with the validation notice is "overshadowing" if it renders the letter "confusing," *see Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir.1997), or if it makes the debtor "uncertain as to her rights," *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir.1996). Further, the confusing, contradictory or inconsistent language need not be threatening to violate the FDCPA. *See id.*

The Seventh Circuit most recently addressed the requisites for an overshadowing claim in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir.1997). Attorney John Heibl was hired by a credit-card company to collect Curtis Bartlett's debt. Heibl sent Bartlett a letter explaining that "if you wish to resolve this matter before legal action is commenced, you must do one of two things within one week of the date of this letter," namely, pay $316 toward the $1700 debt or call the creditor to make payment arrangements. *Id.* at 498. Heibl's signature was followed by the standard validation notice informing Bartlett about his thirty-day right to dispute and demand verification of the debt, but directly below it Heibl added: "suit may be commenced at any time before the expiration of this thirty (30) days." *Id.* Bartlett claimed that the letter violated section 1692g by presenting his rights in a confusing manner.

The Seventh Circuit agreed, reversing the district court's judgment for the defendant and ordering the court to enter judgment in Bartlett's favor instead. The court explained that while the FDCPA does not explicitly prohibit confusing disclosures, appeals courts have held "that it is implicit that the debt collector may not defeat the statute's pur-

---

**1.** Although numerous other circuits employ a "least sophisticated" consumer or debtor standard, the Seventh Circuit has adopted the "unsophisticated" consumer standard to "relieve incongruity between what the [least sophisticated consumer] standard would entail if read literally, and the way courts have interpreted the stan-

dard." *See Gammon*, 27 F.3d at 1257. While the least sophisticated consumer is, literally, the "single most unsophisticated consumer who exists," circuits that use this standard nevertheless "routinely blend in the element of reasonableness." *Id.*

pose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Id.* at 498. Stated more simply, "the unsophisticated consumer is to be protected against confusion, whatever form it takes." *Id.* The court observed that overshadowing verification rights is just one method of confusion, and using contradictory language is another. *Id.* at 500. Turning to Heibl's letter, the court found that telling Bartlett he would be sued if he did not begin payments within a week, while simultaneously stating that Bartlett may contest the debt within thirty days, "turn[ed] the required disclosure into legal gibberish. That's as bad as an outright contradiction." *Id.* Because the case law left "no doubt" that Heibl's letter was confusing, judgment for Bartlett was appropriate. *Id.* at 501.[2]

Using a fact-based approach similar to the *Bartlett* court's, other circuits have ruled that even an implied threat to a consumer's credit rating can overshadow a validation notice. For example, in *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225–26 (9th Cir.1988), the plaintiff received a letter stating that if payment was received within ten days, the collection agency would refrain from posting the debtor's account to its "master file." The court found that this language, juxtaposed with a warning that the debtor's credit rating was his "most valuable asset," would lead the least sophisticated debtor to conclude that "he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the ... master file of his local collection agency," his credit rating destroyed. *Id.*

Likewise, in *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir.1996), the plaintiff received a collection letter whose reverse side

contained a validation notice properly conveying the information required by section 1692g(a). 74 F.3d at 34. But the front of the letter stated, "If you do not wish to dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file.... It is our practice to post unpaid collections in the amount of $25 or more to individual credit records." *Id.* The court concluded that this language contradicted the validation notice located on the reverse side of the letter, making it "ineffective." *Id.* at 35. Upon reading that language, the least sophisticated consumer could "readily believe" that his or her credit record would be permanently affected if the claim was not paid within ten days. *See id.* at 34.

When viewed in a light most favorable to Ozkaya, the allegations here state a valid overshadowing claim. The *Bartlett* court's generous definition of overshadowing and its willingness to direct judgment for the debtor, as well as the factual congruence between this case and *Russell* and *Swanson*, convince us to allow the claim to proceed. Telecheck's warning that "any delay" in payment "may affect your ability to use checks" could confuse the unsophisticated consumer because it fails to explain how this comports with her thirty-day right to contest the debt. *See Bartlett*, 128 F.3d at 500 (explaining that creditor's right to sue and debtor's right to dispute the debt are "not inconsistent, but by failing to explain how they fit together the letter confuses."). Ozkaya may well have wished to assert a defense for nonpayment—that the car repairs were not made correctly—but feared that she did not really have thirty days to dispute the debt if doing so would be seen as "a delay" or an "attempt to avoid th[e] debt" punishable by a sudden inability to write checks. Compl.Ex. A. Telecheck compounded the confusion by urging

**2.** Confronted with language more direct than in Bartlett's letter, other courts have clearly held that demand for "immediate" payment or payment in a time period less than thirty days overshadows or contradicts the thirty day period to dispute the debt. *See, e.g., Avila*, 84 F.3d at 226 (letter giving debtor ten days to pay "or else" inconsistent with 30 days allowed by validation notice); *Miller v. Payco–General Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991) (demand that consumer respond "immediately," "now" and "today" directly contradicts validation notice); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991) (threat to sue within ten days would induce a reader "to overlook his statutory right to dispute the debt within 30 days"). The *Bartlett* decision is notable for its directing judgment in favor of the plaintiff, ruling that the caselaw "leaves no room for doubt that the letter to Bartlett was confusing."

Ozkaya to resolve the dispute "quickly" when, in fact, she had at least thirty days.

Just as in *Russell* and *Swanson,* which involved implied threats to a debtor's credit purchasing power, Ozkaya could "readily believe" that her ability to undertake a fundamental financial transaction—writing checks—would be severely affected if she did not pay the debt with haste. In its first communication to Ozkaya, Telecheck stated that it had *already* entered her name into its "national computer files." This language creates an even greater sense of urgency than the *Swanson* debt collector's statement about posting the debtor's account to its "master file" after ten days should the debtor fail to pay. Telecheck's letter also presents a stronger case for overshadowing than the communications in *Russell* or *Swanson* because they involved implied threats (posting the collections to the agency's file), not explicit threats to ruin the debtor's credit. Telecheck's language is far more direct; the letter told Ozkaya that she could be *prevented* from writing checks or opening a checking account "at over 90,000 merchants and banks who use Telecheck nationally . . . [u]ntil this is resolved." An unsophisticated consumer could interpret this to mean that until she pays, she will not be able to write checks—anywhere—because her name is already on some "bad check" list that has been distributed across the country.

Although *Swanson* and *Russell* both involved threats to a debtor's credit rating, we cannot say that the threat of a poor credit rating would chill an unsophisticated consumer's desire to dispute the debt any more than losing the ability to write checks. In addition, while *Swanson* and *Russell* are from "least sophisticated" consumer jurisdictions, this distinction is without a difference here. As stated in *Gammon,* the phrase "unsophisticated consumer" simply clarifies the manner in which "least sophisticated consumer" jurisdictions have generally interpreted that standard—as containing an element of reasonableness. *See Gammon,* 27 F.3d at 1257. Therefore, even under the "unsophisticated" consumer standard we cannot say beyond doubt that Ozkaya would not be confused or uncertain of her rights after reading the letter.

Telecheck argues that because it did not demand payment "immediately," or within a specific amount of time, it did not overshadow the validation notice. *See, e.g., Young v. Meyer & Njus, P.A.,* 953 F.Supp. 238 (N.D.Ill.1997) (dismissing overshadowing claim in part because "[t]he letter does not demand payment 'immediately,' 'now,' or 'today.' "). *Young,* however, does not require dismissal, for two reasons. First, *Young* was decided before the Seventh Circuit made clear in *Bartlett* that any language that leaves the debtor confused about his or her rights to dispute the debt violates the Act. *Young* based dismissal on distinguishing the plaintiff's claim from the types of overshadowing found in earlier cases, which is contrary to the *Bartlett* court's case-specific focus on the communication's propensity to confuse the unsophisticated consumer. Second, Telecheck did not have to use the word "immediately" or demand payment within a certain amount of time to overshadow Ozkaya's thirty-day verification rights. Telecheck conveyed a clear sense of urgency with its statement that "[a]ny delay, or attempt to avoid this debt, may affect your ability to use checks." Likewise, Telecheck implored Ozkaya to send payment so that it could update her file "quickly," and stated that it intended to "resolve" the claim "quickly" as well. An unsophisticated consumer could easily be left with the impression that she has no choice but to pay up quickly or suffer the consequences—instead of demanding verification or attempting to dispute the debt. *See, e.g., Cavallaro,* 933 F.Supp. at 1155 (motion for summary judgment on overshadowing claim denied even though allusions to potential lawsuit did not explicitly contradict the validation notice and letter did not definitively threaten action before thirty days; a reasonable jury could find that the least sophisticated consumer would be intimidated by the reference to legal action).

█ Finally, Telecheck asserts a meritless "defense" to Plaintiff's overshadowing claim—that its statements were true and did not threaten Ozkaya with adverse consequences that did not already exist. Truth or

falsity is not relevant to whether Ozkaya has stated a claim under section 1692g. Instead, the issue is whether the language in the letter, true or not, overshadowed the notice. In sum, because we cannot say beyond doubt that Telecheck's letter did not overshadow its validation notice, Ozkaya's section 1692g claim must stand.

## II. Omitting or Obscuring the Date of a Dunning Letter Does Not Violate the FDCPA

Ozkaya's second ground for relief under section 1692g must fail, however. Ozkaya alleges that the date Telecheck sent the letter was not clear from its face. She claims that this lack of clarity overshadowed her section 1692g rights because it impaired her ability to ascertain the amount of time she had to dispute the debt. Telecheck responds that the date the letter was sent is immaterial since the statute provides that the thirty-day period for disputing the debt begins to run when the debtor *receives* the notice, a date that only Ozkaya could know. In any event, Telecheck asserts, the letter was in fact dated—as part of a bar code at the top of the letter.

The plain language of the statute defeats Ozkaya's claim. Section 1692g(a)(3) specifically provides that a validation notice must contain "a statement that unless the consumer, within thirty days *after receipt* of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3) (emphasis added). Consequently, the only date that affects the consumer's right to dispute the debt, and thus the only date the consumer has to know for this purpose, is the date the letter was received. This result advances the FDCPA's aim to protect consumers from unscrupulous debt collectors and debt collection practices. *See* 15 U.S.C. § 1692(e). The statutory language clearly favors the consumer by running the thirty-day period from the date of receipt, a date later and more easily ascertainable by the debtor. As a practical matter, if the mailing date began the 30–day period, an unscrupulous debt collector could conceivably send a "pre-dated" letter, giving the consumer much less time to dispute the debt.

## III. Ozkaya's Unauthorized Fee Allegations State a Section 1692(f) Claim

Count II of Ozkaya's complaint alleges that Telecheck's attempt to collect a $25.00 fee in addition to the amount of the debt violates FDCPA section 1692f(1). Section 1692f(1) prohibits collecting any amount in excess of the debt absent express authorization in the agreement creating the debt or unless such a fee is "permitted by law." 15 U.S.C. § 1692f(1). Because Ozkaya does not allege the existence of an agreement creating the debt with provisions relating to excess fees, we are limited to asking whether the fee is permitted by law. Federal courts look to state law in determining whether a fee is "permitted by law" under section 1692(f)(1). *See, e.g., Ditty v. Check Rite, Ltd.,* 973 F.Supp. 1320, 1322 (D.Utah 1997) (since no agreement provided for fee, efforts to collect fee violated section 1692f(1) unless permitted by Utah law); *Patzka v. Viterbo College,* 917 F.Supp. 654, 659 (W.D.Wis.1996) (collection of fee not allowed because Wisconsin law prohibits attachment of collection fees to consumer debts); *West v. Costen,* 558 F.Supp. 564, 582 (W.D.Va.1983) (collection of fee permitted if expressly authorized by agreement or "otherwise permitted by state law").

Ozkaya contends that Telecheck's $25 service fee for her stopped check is not "permitted by law" because Illinois law is silent on the issue. Telecheck responds that express statutory permission is not necessary. It argues that because the FDCPA requires any fee to be *expressly* authorized by agreement, but not *expressly* permitted by law, the Court is prohibited from judicially inserting the word "expressly" to limit the phrase "permitted by law." According to Telecheck, legislative history supports its interpretation because Congress rejected an amendment to section 1692(f)(1) stating that the fee must be expressly authorized by law.

We need not delve into the exercise of determining what significance to attribute to Congress' rejection of a particular amendment, however, because federal courts direct us to look for the answer in state law, where

we have found two Illinois statutes that speak directly to the propriety of imposing and collecting service fees. The Illinois Collection Agency Act provides that, absent an agreement expressly authorizing collection of a fee in excess of the actual 'debt or claim, the fee must be "expressly authorized by law." *See* 225 ILCS 425/9. Therefore, Illinois law fills section 1692(f)(1)'s gap by requiring "express" legal authorization in order to impose service fees beyond the debt.

But no Illinois law provides express authorization in the situation present here—namely for payment stopped on a check. To the contrary, the Illinois Commercial Code expressly authorizes a collection fee in only the following circumstances: when the "drawer [of a check] does not have an account with the drawee, or ... drawer does not have sufficient funds in his account, or ... drawer does not have sufficient credit with the drawee...." 810 ILCS 5/3–806. Nowhere does the Code permit a debt collector to tack on a $25 service charge when the debtor has stopped payment on a check to the creditor.

Accordingly, Ozkaya has stated a section 1692(f)(1) claim based on Telecheck's service fee. Telecheck's only recourse is to produce an agreement authorizing this fee on a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Telecheck's motion to dismiss is denied in part and granted in part. We find that Ozkaya has stated a valid claim under section 1692g insofar as it is based on her allegations that the language in Telecheck's letter overshadowed her right to dispute the debt. To the extent the 1692g claim is premised on Telecheck's failure to date the letter intelligibly, it is dismissed. Ozkaya has also stated an unauthorized fee claim under FDCPA section 1692(f)(1).

A status hearing will be held in open court on November 10, 1997 at 9:00 a.m. to set a schedule for briefing cross-motions for summary judgment.