No. 01-791

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 271

RAYMOND E. DANELSON and
LANA K. DANELSON,
husband and wife,

Plaintiffs and Appellants,

v.

HOWARD G. ROBINSON and
CONSTANCE L. ROBINSON,

Defendants and Respondents.

APPEAL FROM:     District Court of the Fifteenth Judicial District,
                 In and for the County of Daniels, Cause No. D.V. 10-2000-14,
                 The Honorable David Cybulski, Judge presiding

COUNSEL OF RECORD:

        For Appellants:

                Joanne M. Briese, J. Gregory Tomicich, Billings, Montana

        For Respondents:

                Matthew W. Knierim, Christoffersen & Knierim, Glasgow, Montana

Submitted on Briefs: April 4, 2002

Decided: October 2, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ 1     Raymond E. Danelson and Lana K. Danelson (the Danelsons) appeal an Order from the District Court for the Fifteenth Judicial District, Daniels County, granting Summary Judgment to Howard G. Robinson and Constance L. Robinson (the Robinsons).  We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

¶ 2     We restate the issues on appeal as follows:

¶ 3     1. Did the District Court err when it determined that the default notice complied with the terms of the Contract for Deed?

¶ 4     2.  Did the District Court err when it failed to consider whether the Robinsons had waived their right to declare a forfeiture of the contract and were estopped thereby?

## FACTUAL and PROCEDURAL BACKGROUND

¶ 5     On April 1, 1993, the Danelsons entered into a Contract for Deed with the Robinsons. The Danelsons and the Robinsons had been friends for approximately 12 years when they entered into the contract.  The real property the Robinsons contracted to sell to the Danelsons is located in Daniels County, Montana, Township 35 North, Range 48, East Montana Meridian.  Under the terms of the contract, the Danelsons were to make annual payments of $16,000, due on December 1 of each year until the balance was fully paid.  The contract was on escrow with the Daniels-Sheridan Federal Credit Union of Scobey, Montana, and payments were made to the Credit Union.

¶ 6     The Danelsons made the annual payments until December 1, 1999, when they failed to make the  required payment.  At that time, the Danelsons had paid a total of $111,000 on

2

the contract, which was applied mainly to interest and according to the Robinsons, the principal balance due was $170,838.75.

¶ 7    Prior to December 1, 1999, the Danelsons contacted the Robinsons three times explaining that they were having financial problems and that they might be late with their payment. Howard was concerned about payments he needed to make to his sisters on a loan with them. Howard told Raymond that he would take out a personal loan to pay his sisters and that he would give the Danelsons whatever time they needed to come up with the money so long as the Danelsons paid the additional interest and other expenses that the Robinsons might have from taking out the loan.

¶ 8    On December 2, 1999, Raymond contacted Howard and told him that he would not be able to make the payment. The Danelsons had been unable to obtain revenue from the sale of their 1999 grain crop because the crop had been sold with the Credit Union's name on the check. Raymond called Howard two more times in December and once in January letting him know that he still did not have the money. Raymond also told Howard in January that if need be he would take out a loan from his mother-in-law. Raymond maintains that during all three phone calls Howard assured him that he was not worried about the payment and that taking out a loan from Raymond's mother-in-law was not necessary.

¶ 9    On February 7, 2000, the Robinsons sent a default notice to the Danelsons as required under the contract and gave the Danelsons 90 days to remedy the default. After the Danelsons received the letter, Raymond spoke with Howard once in February and twice in March updating him on the situation. During the second conversation in March, Raymond

3

told Howard that he would farm or lease the land to get income from it and make the defaulted 1999 payment in the fall of 2000 along with the payment due for that year. On May 18, 2000, the Robinsons had the Daniels-Sheridan Federal Credit Union of Scobey, Montana forward escrow documents for the property, including a quit claim deed from the Danelsons to the Robinsons in the event of a default on the contract, and the Robinsons recorded a quit claim deed on May 26, 2000.

¶ 10   One month later, on June 23, 2000, the Danelsons filed a complaint against the Robinsons. In their complaint, they requested that the District Court estop the Robinsons from terminating the Contract for Deed and that a quit claim deed, giving ownership back to the Robinsons, be quashed and set aside as null and void. On August 8, 2001, the District Court entered an Order for Summary Judgment against the Danelsons.

## STANDARD OF REVIEW

¶ 11   Our standard of review in appeals from summary judgment rulings is *de novo*. *Motaire v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156, *citing Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 87 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## ISSUE 1.

¶ 12   *Did the District Court err when it determined that the default notice complied with*

*the terms of the Contract for Deed?*

¶ 13 The Danelsons contend that the default notice was defective for two reasons. First, they argue that the notice did not comply with paragraphs 17 and 18 of the Contract for Deed. Second, they contend that the default notice was defective because it was signed only by Howard Robinson and not by the other seller, Constance Robinson.

¶ 14 As to the Danelsons first contention, paragraph 17 of the contract requires the sellers to give written notice of default by certified mail addressed to the buyers setting forth therein that the buyers are in default of the agreement and that the buyers shall have 90 days to cure the default. Paragraph 18 sets forth the additional fees that have to be paid to the escrow agent to cure a default, including attorney fees, costs, and telephone calls.

¶ 15 In prior cases we have noted:

> There must be strict pursuance of the course prescribed by the contract in foreclosing the vendee's rights thereunder, particularly when it involves a forfeiture of the payments made by the vendee.

*Quigley v. Acker*, 1998 MT 72, ¶ 22, 288 Mont. 190, ¶ 22, 955 P.2d 1377, ¶ 22 (*citing Shuey v. Hamilton* (1963), 142 Mont. 83, 91, 381 P.2d 482, 486; *Rader v. Taylor* (1958), 134 Mont. 419, 427, 333 P.2d 480, 486). In this case, the Robinsons did comply with the course prescribed by the contract. They gave written notice by certified mail to the Danelsons that the required payment of $16,000 due on December 1, 1999, was not timely made and they informed the Danelsons that they had 90 days to cure the default. As to paragraph 18, there is nothing in that paragraph that leads this Court to the conclusion that the default notice must include information regarding additional fees that need to be paid to the escrow agent,

such as attorney fees and costs. Excluding this information does not make the default notice defective. As such, the default notice sufficiently complied with paragraphs 17 and 18 of the Contract for Deed.

¶ 16     Second, the Danelsons point to our decision in *Quigley*, ¶ 5, where an amended termination notice was not signed by the party sending the notice. This Court held in *Quigley*, that the absence of the signatures was a failure to comply with the contract's course and procedures. To that end, the Danelsons claim that it is possible that since Constance was a party to the contract and had not signed the notice of default that she did not agree with the default notice.

¶ 17     Though it is true that Constance did not sign the notice, the Danelsons failed to make this argument in the District Court. This Court does not address issues raised for the first time on appeal. *Bryan v. District*, 2002 MT 264, ¶ 19, 312 Mont. 257, ¶ 19, 60 P.3d 381, ¶ 19 (*citing Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). Because the Danelsons did not make this argument below, they have waived the right to bring this argument on appeal.

¶18     Accordingly, we affirm the trial court's Order for Summary Judgment on Issue 1.

### ISSUE 2.

¶19     *Did the District Court err when it failed to consider whether the Robinsons had waived their right to declare a forfeiture of the contract and were estopped thereby?*

¶20     The Danelsons contend that Howard waived his right to terminate the contract and, because he waived the right, he should be estopped from forfeiting the contract. The

6

Danelsons argue that the Robinsons waived their right when Howard told Raymond that they did not have to borrow money from Raymond's mother-in-law, and that Howard would accept payment in the fall of 2000 for the defaulted December 1, 1999 payment and the December 1, 2000 payment.

¶21 We conclude that the District Court erred when it dismissed the Danelsons' waiver and estoppel arguments as an attempt to offer parol evidence to amend the contract. The Danelsons were not trying to amend the contract, they were simply trying to show that the Robinsons, having a right to foreclose the contract, waived that right for at least a period of time; that the Danelsons relied on this waiver; and that the Robinsons should be estopped thereby. *See Idaho Asphalt Supply v. Dept. of Transp.*, 1999 MT 291, ¶ 19, 297 Mont. 66, ¶ 19, 991 P.2d 434, ¶ 19; *In re Marriage of* K.E.V. (1994), 267 Mont. 323, 331, 883 P.2d 1246, 1252 (*citing Sweet v. Colborn School Supply* (1986), 196 Mont. 367, 372-73, 639 P.2d 521, 524). Accordingly, we reverse and remand on these two issues as there are material questions of fact at issue.

¶ 22 Affirmed in part, reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER

7

/S/ PATRICIA COTTER
/S/ JIM RICE