No. 02-798

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 279

VANDYKE CONSTRUCTION COMPANY, INC.,

  Plaintiff and Appellant,

 v.

STILLWATER MINING COMPANY,

  Defendant and Respondent.

APPEAL FROM: District Court of the Sixth Judicial District,
       In and For the County of Sweet Grass, Cause No. DV 2002-10,
       Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      John M. Kauffman and Sarah C. Bigsby, Kasting,
      Combs & Kauffman, P.C., Bozeman, Montana

    For Respondent:

      Charles E. Hansberry and Paul D. Miller, Holland & Hart, L.L.P.,
      Billings, Montana

          Submitted on Briefs: July 10, 2003

             Decided: October 7, 2003

Filed:

      _____
           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     VanDyke Construction Company, Inc. (VanDyke), contracted to construct a pipeline and widen a road for Stillwater Mining Company (Stillwater). VanDyke filed the underlying action after disputes arose concerning performance of the contracts. It now appeals from the order of the Sixth Judicial District Court, Sweet Grass County, which stayed litigation and compelled arbitration. We affirm.

¶2     The dispositive issue is whether the District Court erred when it concluded VanDyke waived its right to object to the arbitration provisions in its contracts with Stillwater. Because we hold the District Court did not err in its conclusion, we need not address the other arbitration-related issues such as ambiguity and mistake which VanDyke raises.

FACTUAL AND PROCEDURAL BACKGROUND

¶3     In July of 2001, VanDyke, a Montana corporation, and Stillwater, a Delaware corporation conducting mining operations in Montana, executed two construction contracts. Under one contract, VanDyke agreed to build a pipeline for Stillwater for $1,193,607. The second contract required VanDyke to widen a road for Stillwater for $139,030.

¶4     During the fall of 2001, disputes developed between Stillwater and VanDyke regarding payment on, and performance of, the two contracts. Shortly thereafter, Stillwater terminated both contracts.

¶5     For purposes of the issue presented here, both contracts contain identical provisions. Both include title pages which state "[Stillwater] and [VanDyke] have entered into this Contract based upon the following Contract Documents," then list the contract documents,

2

including terms and conditions, special conditions, and exhibits. Special Condition 8 (also referred to as SC-8) of both contracts provides, in relevant part:

> Following unsuccessful negotiations of senior executives as provided in the General Condition titled "DISPUTES" and notwithstanding the remainder of such clause, and for any other controversy or claim arising out of or relating to the Contract Documents or the breach thereof, (each a "Controversy"), Controversies shall be settled by arbitration administered by the American Arbitration Association (AAA) under its Construction Industry and Arbitration Rules.

¶6 On January 4, 2002, VanDyke's counsel wrote to Stillwater by certified mail in reference to the pipeline contract. The letter began, "Pursuant to SC-8 Arbitration of the Contract between [Stillwater] and [VanDyke], request is hereby made by [VanDyke] for Arbitration of the following matters[.]" On January 16, VanDyke's counsel again wrote to Stillwater by certified mail, this time with reference to the road-widening contract. Again, the letter began with VanDyke's request for arbitration "[p]ursuant to SC-8 Arbitration of the Contract." Both the January 4 and the January 16 letters ended with "Please contact the undersigned by [date] to coordinate the steps necessary to bring this case to Arbitration at an early date for the benefit of all parties." Stillwater's attorney responded by letter stating Stillwater did not wish to pursue arbitration at that time, but wanted to attempt to resolve the matter through non-binding mediation, "outside of AAA, thus avoiding fees."

¶7 On January 18, 2002, VanDyke's vice-president wrote Stillwater two letters rejecting settlement offers by Stillwater. In both letters, he acknowledged VanDyke's earlier request for arbitration, which he stated Stillwater had refused. He then set forth breakdowns of the

3

amounts of money due VanDyke for work performed on the contracts and threatened "legal steps and possible litigation" if final payment was not processed expeditiously.

¶8 In a February 25, 2002 letter to Stillwater's counsel, VanDyke's attorney suggested possible dates for arbitration of the disputes. Another letter the following month related to lists of possible mediators and arbitrators. Finally, in an April 24, 2002 letter to Stillwater's counsel, VanDyke's counsel indicated his client was willing to draft the appropriate documents to initiate arbitration through the American Arbitration Association if further settlement negotiations and mediation were unsuccessful.

¶9 In May of 2002, Stillwater's director of project development, the president and vice-president of VanDyke and others, including both parties' counsel, met at the offices of Stillwater's counsel to discuss resolution of the disputes. The meeting was unsuccessful. VanDyke's owner later testified he told the Stillwater representatives at that meeting that VanDyke would not arbitrate and would "see them in court."

¶10 VanDyke filed this action two months later. On VanDyke's motion, the District Court initially stayed arbitration pending its determination of whether the court or the American Arbitration Association had jurisdiction of the dispute. After a hearing on VanDyke's motion to enjoin arbitration and Stillwater's motion to stay litigation and compel arbitration, the court issued findings of fact, conclusions of law and an order. Based on its findings of fact, the court concluded the arbitration provision was neither ambiguous nor included in the contracts by mistake. The court further concluded that, by insisting on arbitration, VanDyke had waived any legal objections it had to the arbitration provision. The court dissolved its

previous stay of arbitration, stayed the underlying litigation, and compelled arbitration of all claims under the contracts. VanDyke appeals.

## STANDARD OF REVIEW

¶11 VanDyke does not appeal any of the factual findings of the District Court. Instead, it challenges the court's conclusions of law. We review a district court's conclusions of law to determine whether they are correct. *Kingston v. Ameritrade, Inc.*, 2000 MT 269, ¶ 9, 302 Mont. 90, ¶ 9, 12 P.3d 929, ¶ 9.

## DISCUSSION

¶12 Did the District Court err when it concluded VanDyke waived its right to object to the arbitration provisions in its contracts with Stillwater?

¶13 In an argument raised for the first time on appeal, VanDyke asserts that because waiver of its right to object to arbitration "is essentially a waiver of VanDyke's right to a jury trial," we should apply the test for waiver of a fundamental right, which must be made specifically, voluntarily and knowingly. *See State v. Howard*, 2002 MT 276, ¶ 12, 312 Mont. 359, ¶ 12, 59 P.3d 1075, ¶ 12.

¶14 *Howard* involved a question concerning a criminal defendant's waiver of the right to counsel. It does not support VanDyke's assertion that waiver of its right to object to arbitration is essentially a waiver of the right to jury trial. Nor does it support addressing such a claim raised for the first time on appeal when no reason has been given for the failure to raise it earlier. *See Eddleman v. Aetna Life Ins. Co.*, 1998 MT 52, ¶ 11, 288 Mont. 50, ¶ 11, 955 P.2d 646, ¶ 11.

5

¶15     Waiver is a voluntary and intentional relinquishment of a known right, claim or privilege, which may be proved by express declarations or by a course of acts and conduct which induces the belief that the intent and purpose was waiver. *Tynes v. Bankers Life Co.* (1986), 224 Mont. 350, 363, 730 P.2d 1115, 1123 (citation omitted). To establish a knowing waiver, the party asserting waiver must demonstrate the other party's knowledge of the existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver. *Firestone v. Oasis Telecommunications*, 2001 MT 297, ¶ 18, 307 Mont. 469, ¶ 18, 38 P.3d 796, ¶ 18.

¶16     In this case, the record is clear that VanDyke had knowledge of its rights regarding arbitration and litigation through its attorney. The January 4 and January 16 letters from VanDyke's attorney requesting arbitration pursuant to the contracts were totally inconsistent with the right to object to the contract provisions requiring arbitration. The three subsequent letters from VanDyke's counsel to Stillwater--one each in February, March and April--sought to move the arbitration process along. These letters, too, are inconsistent with a right to object to the arbitration clauses in the contracts. Moreover, the subsequent delay in resolving this matter and the additional cost to Stillwater for having to defend the arbitration provisions in the District Court and in this appeal are clearly prejudicial.

¶17     In arguing it did not waive its right to object to arbitration, VanDyke relies first on the letters its vice-president wrote to Stillwater dated January 18, 2002, which it characterizes as a reservation of the right to litigate, rather than arbitrate. We disagree. Notwithstanding the warning in the vice-president's letters of "legal steps and possible litigation," nowhere in

6

those letters did VanDyke object to arbitration and demand to litigate its disputes with Stillwater. Instead, the warning in the January 18 letters could be read as a threat to compel arbitration immediately as a "legal step" rather than to attempt further efforts to negotiate an acceptable resolution. This is especially true when the vice-president's letters are viewed in the context of the numerous other communications from VanDyke's counsel to Stillwater following termination of the contracts. Moreover, VanDyke's owner testified that, until the May 24, 2002 meeting with Stillwater, his company had intended to arbitrate the disputes. On this record, we conclude VanDyke's vice-president's January 18 letters do not amount to an objection to arbitration or a reservation of the right to litigate.

¶18 VanDyke also relies on its owner's statement at the May 24, 2002 meeting with Stillwater representatives that VanDyke would "see you in court." The "see you in court" statement was made in the context of overall settlement negotiations. Moreover, that comment was simply too late to revoke VanDyke's earlier multiple written waivers of objection to arbitration pursuant to the contracts and the owner's later testimony that--prior to the May meeting--it had intended to arbitrate the disputes.

¶19 We hold the District Court correctly concluded that VanDyke waived its right to object to the arbitration provisions in the contracts. On that basis, we hold the court did not err in compelling arbitration.

¶20 Affirmed.

/S/ KARLA M. GRAY

7

We concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART