No. 03-059

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 84

COLLECTION BUREAU SERVICES, INC.,
a Montana corporation,

       Plaintiff and Appellant,

  v.

RUTH A. MORROW a/k/a RUTH A. BUCKNER,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and For the County of Custer, Cause No. DR 2001-116,
                    Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Dennis E. Lind, Datsopoulos, MacDonald & Lind, Missoula, Montana

       For Respondent:

       S. Kim Taylor, Lucas & Tonn, Miles City, Montana

       For Amicus:

       Andrea J. Olson, ASUM Legal Services, Missoula, Montana

                               Submitted on Briefs:  September 4, 2003

                                       Decided:  April 6, 2004

Filed:

                               _____
                                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Collection Bureau Services, Inc. (Collection Bureau), filed a complaint on February 23, 2001, in Justice Court against Ruth Morrow (Morrow) to collect the face value, service charges, and statutory damages for eight checks she issued with insufficient funds in June of 2000. Morrow countered that Collection Bureau waived its right to seek $800 in statutory damages under § 27-1-717(3), MCA, and in pursuing such damages, it had violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. After the Justice Court entered judgment in favor of Morrow, Collection Bureau appealed to the District Court. The District Court also granted summary judgment in favor of Morrow and, after a trial on damages, awarded actual damages, statutory damages, costs of suit and attorney fees to Morrow. Collection Bureau now appeals those two orders of the District Court. For the reasons stated below, we affirm the orders of the District Court.

## FACTS

¶2 In June of 2000, Ruth Morrow issued eight bad checks for a total face value of $148.96. The checks ranged in value from $10.20 to $25.00. Three of the checks were to the Golden Spur, three to Pizza Hut, and one each to 4B's and Holiday. Those businesses engaged Collection Bureau to collect the unpaid value of the checks. In July 2000, Collection Bureau sent Morrow eight letters, one for each check demanding the face value plus a thirty dollar service charge. Adding the thirty dollar service charge to each of eight checks increased the amount Morrow owed by $240.00, more than doubling the amount from

2

$148.96 to $388.96. On November 22, 2000, Collection Bureau sent Morrow another letter, which demanded payment of the entire balance of $388.96 and also stated:

> YOU MAY EXPERIENCE DIFFICULTY WRITING CHECKS DUE TO THE UNPAID ITEMS. MT. CODE ANNOTATED 27-1-717 PROVIDES SPECIFIC LEGAL REMEDIES. CALL US TO RESOLVE THIS.

On December 4, 2000, Morrow responded by sending a check for $25.00. She also included a note which stated: "I must have missed your bill in the mail. I will send 50.00 or more every two weeks until this is taken care of." Morrow next sent Collection Bureau a money order for $10.00 on January 4, 2001. That same day, Collection Bureau returned the money order with a letter which indicated the agreement was to pay $50.00 every two weeks. On January 16, 2001, Morrow made another $50.00 payment which Collection Bureau accepted, leaving a new balance of $313.96.

¶3      Morrow missed the next two promised payments, and on February 23, 2001, Collection Bureau filed suit in Justice Court. Collection Bureau's complaint prayed for a total of $1,113.96, reflecting the $313.96 balance owing for the face amount of the checks and service charges as well as the § 27-1-717(3), MCA, statutory damages of $100 for each of the eight checks for an additional $800.

¶4      On February 27, 2001, Morrow sent a payment of $150.00. On March 1, 2001, Morrow was served with Collection Bureau's complaint. The next day, she called Collection Bureau and spoke with Collection Bureau's employee Cody Kruger. Morrow asked whether or not they had received her payment and inquired into the reason for the suit. Kruger said they filed suit because of Morrow's failure to make the agreed-on payments. Morrow felt

3

that because she had sent the money before being served, it should have been applied to reduce the $313.96 to $163.96. Kruger, however, was only willing to apply the $150.00 to reduce the total prayed for relief of $1,113.96. Kruger also indicated it might be possible to "knock off" a couple hundred dollars if Morrow paid in one lump sum, or in the alternative, Collection Bureau would accept regular payments of $50.00 on the amount prayed for in the complaint.

¶5    Throughout these proceedings, Morrow has only contested the statutory damages. She does not challenge the validity of the face value of the checks plus the service charges. The Justice Court ruled in favor of Morrow, reasoning that, by accepting partial payments instead of payment in full, Collection Bureau had waived its right to statutory damages and subsequently violated the FDCPA by pursuing such damages. On appeal, the District Court granted Morrow's motion for partial summary judgment, holding that Collection Bureau, in accepting partial payment, waived its right to the statutory damages and then violated the FDCPA by pursuing these damages. After a trial on Morrow's damages, the District Court awarded $40.00 actual damages, $1,000 statutory damages, costs of $183.75 and attorney fees in the amount of $17,000. Collection Bureau now appeals, claiming that the District Court erred in interpreting § 27-1-717, MCA, and that if it violated the FDCPA the bona fide error defense applies. 15 U.S.C. § 1692k(c).

STANDARD OF REVIEW

¶6    Our standard of review on appeals from summary judgment is *de novo*. *Sherner v. Conoco, Inc.,* 2000 MT 50, ¶ 10, 298 Mont. 401, ¶ 10, 995 P.2d 990, ¶ 10. We apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Danelson v. Robinson*,

4

2003 MT 271, ¶ 11, 317 Mont. 462, ¶ 11, 77 P.3d 1010, ¶ 11. We review a trial court's legal conclusions to determine whether they are correct. *Gonzalez v. Walchuck*, 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9. Our standard of review for a question of law is plenary. *In re Marriage of Robison*, 2002 MT 207, ¶ 15, 311 Mont. 246, ¶ 15, 53 P.3d 1279, ¶ 15.

## DISCUSSION

Part I: Waiver

¶7    Before addressing the Fair Debt Collection Practice Act violations, we first address waiver. We conclude, as did the District Court, that Collection Bureau waived its right to statutory damages.

¶8    Montana provides various statutory remedies for the payee or the payee's assignee of a dishonored draft. Section 27-1-717, MCA. A payee may collect both the face value of the check and a service charge in a reasonable amount not to exceed $30. Furthermore, when a written demand is made for payment in full, but payment in full is not made, then the payee or its assignee may pursue statutory damages in an amount which is "equal to the service charge plus the greater of $100 or three times the amount for which the check, draft, or order was issued. However, damages may not exceed the value of the check, draft, or order by more than $500." Section 27-1-717(3), MCA. Before a payee on a dishonored check may seek statutory damages in court, it must demand payment in full and wait at least ten days. Section 27-1-717(4)(a), MCA.

5

¶9 The District Court held that Collection Bureau had waived its right to seek statutory damages. A waiver is the intentional and voluntary relinquishment of a known right, claim or privilege. *Reiter v. Yellowstone County* (1981), 192 Mont. 194, 202, 627 P.2d 845, 850. Statutorily-created rights may be waived.

> **Waiver of a benefit of a law.** Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.

Section 1-3-204, MCA.

¶10 Although statutes creating rights for a public benefit are not subject to waiver, *Rothwell v. Allstate Ins. Co.,* 1999 MT 50, ¶ 16, 293 Mont. 393, ¶ 16, 976 P.2d 512, ¶ 16 (employee indemnification statute, § 39-2-701(1), MCA, not subject to waiver) and *State ex rel. Neiss v. Dist. Ct.* (1973), 162 Mont. 324, 328, 511 P.2d 979, 981 (minimum wage is public benefit not subject to waiver), rights created for private benefits can be waived. In *Matter of Gaither* (1990), 244 Mont. 383, 389, 797 P.2d 208, 212, we held that the surviving widow's right to benefits under the workers' compensation laws was personal to her and thus she could waive or abandon those rights. In the present case, the right of a payee on a dishonored check to pursue statutory damages is a right created solely for the benefit of the payee and is thus subject to waiver under § 1-3-204, MCA.

¶11 Waiver may be proven by express declarations or by a course of acts and conduct so as to induce the belief that the intention and purpose was to waive. *Kelly v. Lovejoy* (1977), 172 Mont. 516, 520, 565 P.2d 321, 324. We have held that waiver may be established by conduct which manifests the intention to forego the benefit:

6

> It may be proved by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act, as to induce the belief that it was his intention and purpose to waive.

*Northwestern F. & M. Ins. Co. v. Pollard* (1925), 74 Mont. 142, 149, 238 P. 594, 596.

¶12    In *VanDyke Const. Co., v. Stillwater Mining Co.,* 2003 MT 279, ¶ 16, 317 Mont. 519, ¶ 16, 78 P.3d 844, ¶ 16,  VanDyke's letters requesting arbitration were deemed a waiver of its right to subsequently object to the contract provisions requiring arbitration.  The express conduct of the sellers in a real estate contract established waiver in *Thiel v. Johnson* (1985), 219 Mont. 271, 711 P.2d 829.  Thiels, the sellers of a motel, expressly waived their right to receive certain monthly contract payments on time when the buyers communicated that, because of low winter months' revenue and an increase in utility rates, they were unable to make their monthly installment payments. Thiels said this was "fine" and that they were willing to work with the buyers as long as the interest payments were made on the underlying contract with the previous owner and "they would be glad to extend their payments to be made until the summer season started rolling again." *Thiel,* 219 Mont. at 275, 711 P.2d at 832.

¶13    In the present case, after having already sent demand letters for each of the eight checks in July of 2000, Collection Bureau sent a letter in November 2000, demanding the full amount of $388.96.  Instead of paying the full amount, Morrow began making installment payments.  She paid $25 in December, and included a note indicating she would make installment payments.  Morrow next sent $10 in January, which Collection Bureau sent back.  Shortly thereafter, Morrow sent a $50 payment which Collection Bureau accepted and

7

applied to the balance of $363.96 leaving a balance of $313.96. Before Collection Bureau received Morrow's next payment of $150 on February 27, it had already filed suit for $1,113.96, including $800 statutory damages under § 27-1-717(3), MCA.

¶14 Collection Bureau contends that there was no intentional waiver of a known right and that, although it accepted partial payments, it repeatedly told Morrow that if she did not make the agreed upon payments, it could invoke its legal remedies under the law. It further contends that it complied with the statute by giving notice in July and November and that nothing would be accomplished by requiring it to give yet another notice. Finally, it contends that it would be contrary to public policy to penalize payees for attempting to settle claims through acceptance of partial payments.

¶15 Morrow responds that the District Court's ruling does not discourage settlement or put debt collectors at a disadvantage. The collector is in control; it can choose whether or not to accept partial payments. If it accepts partial payments, it has not permanently waived its rights to statutory damages. It can reinstate that right with the giving of a new notice. Morrow also points out that, even after accepting partial payments, the collector can, without giving any further notice, pursue a claim for the amount of the debt plus the $30 service fee.

¶16 The District Court held:

> After making the written demand for payment in full for the dishonored checks and service charges, CBS accepted partial payments. By accepting just one partial payment, CBS effectively waived its ability to sue for the $800.00 in statutory damages pursuant to the November 22, 2000 notice. Having waived its right to sue for the statutory damages under the November demand, in order to comply with the Montana Code Annotated § 27-1-717, CBS had to reinstate

8

its statutory rights by issuing another written demand for payment of the remaining balance after deducting all partial payments and waiting ten days. If full payment was not tendered pursuant to the new written demand, CBS could then demand the statutory damages in addition to the remaining balance of dishonored checks and service charges in a lawsuit filed pursuant to CBS's rights under §27-1-717.

¶17 We agree with the reasoning of the District Court. The statutory scheme is designed to give the debtor a ten-day opportunity to pay the debt and service charges before being faced with civil liability for statutory damages. Where, as here, the collector engages in a course of conduct wherein it demands full payment but accepts partial payment, the debtor is led to believe that the collector has foregone its demand and that partial payments are acceptable. Contrary to Collection Bureau's assertion that another demand would serve no purpose, another demand (after having accepted a partial payment) puts the debtor on notice that partial payments are no longer acceptable; that payment in full of the new balance (prior demand less credit for partial payments) must be paid within ten days or the collector may invoke its remedies for statutory damages.

¶18 We hold that acceptance of a partial payment after having made a demand for full payment waives the collector's right to statutory damages under § 27-1-717, MCA. In order to reinstate its right to such damages, the collector must make further demand for payment of the new balance and then wait the requisite ten days before filing suit.

Part II: Violations of the FDCPA

¶19 The Fair Debt Collection Practices Act provides as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

9

(1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt *or permitted by law*.

15 U.S.C. § 1692f(1) (emphasis added).

¶20    The District Court held that, since Collection Bureau sought statutory damages under § 27-1-717, MCA, without having given the requisite demand, it had attempted to collect an amount which was not "permitted by law" and thus had violated 15 U.S.C. § 1692f(1). In particular, the District Court concluded that Collection Bureau violated the FDCPA when it sued for statutory damages without having first complied with the notice requirements of Montana law and then, instead of crediting Morrow's $150 partial payment against the amount owed on the checks ($313.96), it credited it against the statutory damages prayed for in the complaint ($1,113.96).

¶21    The District Court correctly interpreted the federal law.  The FDCPA clearly prohibits a debt collector from using unfair or unconscionable means to "collect or attempt to collect any debt." *Transamerica Financial Services, Inc. v. Sykes* (7th Cir. 1999), 171 F.3d 553, 555 (§ 1692f applies to circumstances where debt collectors attempt to collect fee not authorized by law); *Newman v. Checkrite Calif., Inc.* (E.D. Cal. 1995), 912 F.Supp. 1354, 1377 (attempt to recover amounts not authorized by law is violation of § 1692f(1)).  It further provides that it is unfair or unconscionable for a debt collector to collect any amount which is not expressly authorized by contract or which is not permitted by law.  In the present case, Collection Bureau, in suing for statutory damages of $800 without giving a renewed demand was attempting to collect a sum not "permitted by law."  Furthermore, in applying Morrow's

10

$150 partial payment towards the claimed balance of $1,113.96, it actually collected a sum not "permitted by law." Failure to comply with state statutory requirements prior to attempting to collect sums in excess of the amount of the dishonored check violates § 1692f of the Act. *Ozkaya v. Telecheck Services, Inc.* (N.D. Ill. 1997), 982 F.Supp. 578, 586; *Ditty v. CheckRite Ltd*. (D. Utah 1997), 973 F.Supp 1320, 1324-25. In *CheckRite*, the collector attempted to settle for the amount of the check, plus a service charge and a further sum listed as consideration for a covenant not to sue. State law, however, provided that, unless a civil action had been filed, a debtor could not be liable for a sum greater than the amount of the check, plus a service charge. Accordingly, the court concluded that CheckRite's attempt to collect the excess amount prior to filing suit violated the FDCPA.

¶22 We conclude that when Collection Bureau accepted partial payments and then, without giving a new demand as required by § 27-1-717, MCA, sued for statutory damages and applied a subsequent partial payment of $150 towards the statutory damages, it attempted to collect and actually did collect sums which were not permitted by law. This constitutes a violation of 15 U.S.C. § 1692f(1).

¶23 Collection Bureau contends that, even assuming that it did violate § 27-1-717, MCA, it cannot be held liable since its violation was unintentional. Collection Bureau relies on the bona fide error defense in 15 U.S.C. § 1692k(c), which provides:

> **Intent** (c) A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

11

¶24    Collection Bureau argues that, since there was no prior case law interpreting § 27-1-717, MCA, as requiring a renewed demand after accepting partial payment, it had no forewarning that it was violating Montana law and thus it cannot be said that the resulting violation of FDCPA was "intentional."  Rather, it contends any mistake was a bona fide error.

¶25    This raises a question as to whether a mistake of law qualifies as a bona fide error defense under § 1692k(c). There is a split of authority among the circuit courts on this issue. The minority view holds that mistakes of law can be considered bona fide errors.  *Johnson v. Riddle* (10th Cir. 2002), 305 F.3d 1107, 1121.  The majority view is that the defense is only available for clerical and factual errors. *See, e.g., Picht v. Jon R. Hawks, Ltd.* (8th Cir. 2001), 236 F.3d 446, 451-52;  *Hulshizer v. Global Credit Services, Inc.* (8th Cir. 1984), 728 F.2d 1037, 1038 (no bona fide error defense where the debt collector relied on advice of a Fair Trade Commission (FTC) staff attorney); *Pipiles v. Credit Bureau of Lockport, Inc.* (2nd Cir.1989), 886 F.2d 22, 27; and *Baker v. G.C. Services Corp.* (9th Cir. 1982), 677 F.2d 775. In the Ninth Circuit's decision in *Baker*, the issue was whether a demand letter sent by G.C. Services was misleading in that it threatened legal action when, in fact, G.C. Services had no intention of instituting legal proceedings.  Relying on the "bona fide error" defense of § 1692k(c), G.C. Services contended that it had obtained the advice of legal counsel on the correctness of the contents of the letter and that counsel had met with the staff of the FTC to discuss compliance with the Act.  The Circuit Court rejected this defense holding:

12

"Reliance on advice of counsel or a mistake about the law is insufficient by itself to raise the bona fide error defense." *G.C. Services*, 677 F.2d at 779.

¶26   We note that the Act references "procedures reasonably adapted to avoid any such error." "Procedures" are generally adopted to avoid clerical errors as opposed to mistakes of law. In accord with the majority view, we hold that the fact that Collection Bureau did not anticipate a decision that § 27-1-717, MCA, requires a new demand after acceptance of partial payments does not rise to the level of a "bona fide error" defense under § 1692k(c). That Collection Bureau mistook the law does not make its action any less intentional.

CONCLUSION

¶27   For the above-stated reasons, the orders of the District Court are affirmed. The FDCPA provides for reasonable attorney fees and costs of suit for those who are successful in establishing liability under the FDCPA. 15 U.S.C. § 1692k(a)(3). Since Morrow has prevailed, she is entitled to reasonable attorney fees and costs on appeal. We remand to the District Court for a hearing to determine Morrow's reasonable attorney fees and costs on appeal.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM REGNIER

13

Justice Patricia O. Cotter dissenting.

¶28    I respectfully dissent.

¶29    The Court concludes at ¶18 that acceptance of a partial payment after having made a demand for full payment waives the collector's right to statutory damages under § 27-1-717, MCA. The problem is that the statute suggests no such thing.

¶30    Given that CBS did not violate the statute as written, and that this Court's interpretation of the statute is a matter of first impression, I find our application of the provisions of the FDCPA, and the imposition of over $17,000.00 in attorney fees and costs under that Act, unconscionable. We have effectively, and in violation of § 1-2-101, MCA, inserted into § 27-1-717, MCA, what has been omitted, and then faulted CBS for not construing the law as we--for the first time--have interpreted it. Even if we conclude that CBS was wrong, it is patently unfair to punish it so excessively for taking a position that is entirely defensible under the statute as written. I therefore dissent.

/S/ PATRICIA O. COTTER


Justice James C. Nelson joins in the dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON


Justice Jim Rice joins in the dissent of Justice Patricia O. Cotter.

/S/ JIM RICE

Justice Jim Rice dissenting.

¶31 I join in Justice Cotter's dissent.

¶32 Section 1-3-204, MCA, the waiver provision relied upon by the Court, is one of the "Maxims of Jurisprudence." Section 1-3-101, MCA, provides:

> **Purpose of maxims.** The maxims of jurisprudence set forth in part 2 of this chapter are intended not to qualify any of the other provisions of this code but to aid in their just application.

Pursuant thereto, we have held that § 1-3-204, MCA, cannot be used to "qualify other substantive statutory provisions." *Campbell v. Mahoney*, 2001 MT 146, ¶ 17, 306 Mont. 45, ¶ 17, 29 P.3d 1034, ¶ 17. Here, the Court has used the waiver provision not only to qualify substantive law, but to re-write it.

¶33 In ¶ 16, the Court cites approvingly from the District Court decision:

> [I]n order to comply with the Montana Code Annotated § 27-1-717, CBS had to reinstate its statutory rights by issuing another written demand for payment of the remaining balance after deducting all partial payments and waiting ten days. If full payment was not tendered pursuant to the new written demand, CBS could then demand the statutory damages in addition to the remaining balance of dishonored checks and service charges in a lawsuit filed pursuant to CBS's rights under § 27-1-717.

This language, which sets forth a new "reinstatement" requirement, established by "another written demand," which must reflect "all partial payments," and undergo another "waiting" period, is pure legislating. It is entirely inaccurate to say that these new procedures are necessary "to comply with" § 27-1-717, MCA. Collection Bureau fully complied with the statute, and it is incredulous to hold that its full compliance with the statute somehow transformed into a waiver of its rights thereunder.

16

¶34 In order to clarify matters, the Court should announce that its new legislative requirements shall henceforth be known as new subparagraph (8) of the statute. Of course, the only problem with attaching a subparagraph number to the Court's new requirements is that the number would directly conflict with the subparagraph (8) which has been placed in the statute by the real Legislature:

> (8) Making partial payments of amounts owed under this section or entering into an agreement for paying in whole or in part amounts owed under this section *does not waive* any right that the payee or the payee's assignee may have under this section. Once a demand required under this section is made, *the demand is not required to be repeated* upon partial payment of amounts owed under this section.

Section 27-1-717(8), MCA (2003) (emphasis added).

¶35 The courts should stay out of the legislating business. I would reverse.


/S/ JIM RICE



Justice James C. Nelson joins in the dissent of Justice Jim Rice.


/S/ JAMES C. NELSON